EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Silmarie Méndez Ruiz<br><br>Apelada<br><br>v.<br><br>Techno Plastics Industries, Inc.<br><br>Apelante | Apelación<br><br>2025 TSPR 68<br><br>216 DPR \_\_\_ |

Número del Caso:  AC-2024-0023

Fecha:  26 de junio de 2025

Tribunal de Apelaciones:

Panel VII

 Representantes legales de la parte peticionaria:

 Lcdo. Fernando A. Baerga Ibáñez
 Lcda. Ashley Dayane Martínez Rivera

 Representante legal de la parte recurrida:

 Lcdo. Miguel A. Montalvo Delgado

Materia: Derecho Laboral – El hecho de regresar a la CFSE a recibir tratamiento médico adicional luego de transcurrido el término de reserva de empleo, por sí solo, no constituye justa causa para un despido.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

| Silmarie Méndez Ruiz<br><br>Apelada<br><br>v.<br><br>Techno Plastics Industries, Inc.<br><br>Apelante | AC-2024-23 | Apelación |
|---|---|---|

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 26 de junio de 2025.

El presente recurso nos brinda la oportunidad de precisar si un obrero que acude a la Corporación del Fondo del Seguro del Estado (CFSE) tras desarrollar una condición de salud ocupacional; es reinstalado en su trabajo antes del vencimiento del término de reserva de empleo, y labora activamente para su patrono por varios años luego de esto, puede ser despedido bajo la alegación o "justificación" de que el término de reserva de empleo caducó cuando sufre una recaída o agravación de la condición que lo obliga a regresar a la CFSE para recibir tratamiento médico adicional.

Por las razones que expondremos, contestamos que **no**.

I

El **11 de julio de 2018**, la Sra. Silmarie Méndez Ruiz (señora Méndez Ruiz o apelada) acudió a la CFSE tras desarrollar una condición ocupacional relacionada con las funciones de ensamblaje que realizaba en Techno Plastics

Industries, Inc. (Techno Plastics o apelante).[1] Ese mismo día, el Administrador de la CFSE determinó que la apelada recibiría tratamiento médico en descanso hasta el 21 de julio de 2018 y tratamiento médico mientras trabajaba (CT)[2] a partir del 22 de julio de 2018.[3] Posteriormente, la señora Méndez Ruiz volvió a ser evaluada por la CFSE y recibió la misma determinación de tratamiento en el 2018, 2019 y 2021.[4]

Específicamente, la apelada recibió tratamiento médico en descanso y en CT en cuatro (4) ocasiones adicionales durante los meses de julio, noviembre y diciembre de 2018. También, recibió tratamiento médico en descanso (hasta el 27 de enero de 2019) y en CT (desde el **28 de enero de 2019**)

---

[1]   *Declaración voluntaria del lesionado o informe cuando el patrono se niega a informar el accidente*, Apéndice de la Apelación, pág. 93.

[2]   La Sec. 4Q del Reglamento sobre Derechos de Obreros y Empleados, Reglamento Núm. 3966 de 9 de agosto de 1989, define "Tratamiento Mientras Trabaja (CT)" de la manera siguiente: "cuando el programa terapéutico trazado a un paciente se efectúa mientras éste sigue trabajando, ya que está hábil para hacerlo según el cuadro clínico diagnosticado por el médico".

[3]   *Decisión del administrador sobre tratamiento médico*, Caso Núm. 20184843008, Apéndice de la Apelación, pág. 94.

[4]   La Corporación del Fondo del Seguro del Estado (CFSE) evaluó nuevamente a la Sra. Silmarie Méndez Ruiz (señora Méndez Ruiz o apelada) y determinó que ésta recibiría tratamiento médico en descanso y mientras trabajaba durante las fechas siguientes:

| Evaluación en la CFSE | Tratamiento médico en descanso | Tratamiento médico mientras trabaja |
|---|---|---|
| El 26/7/2018 | Hasta el 30/7/2018 | Desde el 31/7/2018 |
| El 21/11/2018 | Hasta el 30/11/2018 | Desde el 1/12/2018 |
| El 25/1/2019 | Hasta el 27/1/2019 | **Desde el 28/1/2019** |
| **El 10/2/2021** | Hasta el 19/2/2021 | Desde el 20/2/2021 |
| El 19/2/2021 | Hasta el 28/2/2021 | Desde el 1/3/2021 |
| El 3/3/2021 | Hasta el 12/3/2021 | Desde el 13/3/2021 |
| El 3/3/2021 | Hasta el 22/3/2021 | Desde el 23/3/2021 |
| El 12/4/2021 | Hasta el 21/4/2021 | Desde el 22/4/2021 |
| El 22/4/2021 | Hasta el 1/5/2021 | Desde el 2/5/2021 |

*Decisión del administrador sobre tratamiento médico*, Apéndice de la Apelación, págs. 96-113.

en dos (2) ocasiones durante el mes de enero de 2019. Pasado poco más de dos (2) años, el **10 de febrero de 2021**, la CFSE evaluó nuevamente a la señora Méndez Ruiz y determinó que recibiría tratamiento médico en descanso hasta el 19 de febrero de 2021 y comenzaría tratamiento médico en CT el 20 de febrero de 2021. Este escenario se repitió en los meses subsiguientes. Finalmente, el 22 de abril de 2021, la CFSE volvió a evaluar a la apelada y determinó que debía descansar hasta el 1 de mayo de 2021 y recibir tratamiento médico mientras trabajaba a partir del 2 de mayo de 2021.

No obstante, el **26 de abril de 2021**, la apelante despidió a la señora Méndez Ruiz mediante una carta, en la cual le expresó lo siguiente:

> Desde el día **11 de julio de 2018**[,] usted está reportada a la Corporación del Fondo del Seguro del Estado. Techno Plastics [], cumpliendo con lo establecido en el Artículo 5-A bajo reglamentación de dicha Corporación, le reservó el trabajo por 12 meses (360 días), el cual culminó el **6 de julio de 2019**.
>
> Por este medio, le estamos informando que efectivo [e]l día de hoy, **26 de abril de 2021[,]** usted ya no continuará siendo empleada de Techno Plastics []. […]. (Énfasis suplido).**5**

A la luz de estos hechos, el 19 de agosto de 2021, la apelada presentó una *Querella* en contra de Techno Plastics por despido injustificado, discrimen y represalias al amparo del procedimiento sumario laboral provisto en la

---

**5**  *Carta de despido*, Apéndice de la Apelación, pág. 282. Cabe señalar que, según surge del expediente, la apelada trabajó para Techno Plastics Industries, Inc. (Techno Plastics o apelante) desde el 14 de marzo de 2007 hasta el 26 de abril de 2021. *Sentencia Sumaria Parcial del Tribunal de Primera Instancia*, Apéndice de la Apelación, pág. 152.

Ley Núm. 2 del 17 de octubre de 1961, según enmendada, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 *et seq*. En lo pertinente, la señora Méndez Ruíz alegó que fue despedida injustificadamente por la apelante mientras recibía tratamiento médico de la CFSE. Así las cosas, reclamó los remedios correspondientes.

Tras las alegaciones de la apelada, el 13 de septiembre de 2021, Techno Plastics presentó una *Contestación a la Querella*. Entre sus defensas afirmativas, la apelante planteó que la reclamación de despido injustificado era improcedente, pues no se configuraban los elementos necesarios para incoar dicha causa de acción. Techno Plastics adujo, en la alternativa, que el despido de la señora Méndez Ruiz fue justificado ya que el mismo ocurrió de acuerdo con la ley, tras haber caducado el término de reserva de empleo que ordena el Art. 5-A de la Ley Núm. 45 del 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley Núm. 45), 11 LPRA sec. 7. La apelante expuso, además, que no tenía la obligación de continuar reservando el empleo de la apelada, que no actuó de manera ilegal, discriminatoria o en represalia en contra de ésta y que su contrato de empleo se había extinguido debido a su incapacidad.

Luego de varios trámites procesales, el 9 de noviembre de 2022, Techno Plastics presentó una *Moción [] [para] que*

*se dicte sentencia sumaria*. En esencia, reiteró los planteamientos arriba señalados y argumentó que procedía aplicar el derecho y desestimar la reclamación instada en su contra. La señora Méndez Ruiz, por su parte, presentó una *Moción en oposición a sentencia sumaria* el 13 de enero de 2023. En resumen, adujo que estaba capacitada para trabajar cuando expiró el periodo de reserva de empleo y que la apelante no ejerció su prerrogativa de despedirla una vez transcurrió dicho término. La apelada señaló que trabajó ininterrumpidamente para Techno Plastics por espacio de veinte (20) meses luego de que venció el periodo de reserva de empleo, por lo cual debía interpretarse que la apelante había renunciado expresamente a despedirla. Así las cosas, la señora Méndez Ruiz solicitó que el Tribunal de Primera Instancia emitiera una sentencia parcial a su favor decretando que su despido fue injustificado y contrario a lo dispuesto en el Art. 5-A de la Ley Núm. 45, *supra*.

El 7 de marzo de 2023, el foro primario emitió una *Sentencia Sumaria Parcial* en la que formuló veinte (20) determinaciones de hechos. En lo pertinente, se señalan las siguientes:

> 3. La [] [señora Méndez Ruiz] trabajó para Techno Plastics desde el 14 de marzo de 2007 [] [hasta el] 26 de abril de 2021.
>
> […]
>
> 6. La [] [señora Méndez Ruiz] sufrió un accidente de trabajo el 10 de julio de 2018[,] por lo que se reportó a la [] [CFSE] el [] 11 de julio de 2018 con [el] número de caso 20184843008.

[…]

11. Para el 6 de julio de 2019, fecha en que vencieron los [trescientos sesenta] (360) días de la ocurrencia del accidente, la [] [señora Méndez Ruiz] se encontraba trabajando para [] [Techno Plastics] con una autorización de [] [la CFSE].

12. **La [] [señora Méndez Ruiz] se mantuvo trabajando ininterrumpidamente desde el 28 de enero de 2019 hasta el 10 de febrero de 2021**, fecha en que fue examinada por [] [la CFSE] y puesta en descanso hasta el 19 de febrero de 2021.

[…]

17. Con fecha del 26 de abril de 2021, y estando la [] [señora Méndez Ruiz] bajo orden de descanso [] [de la] CFSE, [] [Techno Plastics] [le] notificó por escrito que estaba cesando su relación de empleo con la [] [señora Méndez Ruiz] […].

18. Para la fecha del despido[,] la [] [señora Méndez Ruiz] no había reclamado su reinstalación al empleo luego de [] [la] última determinación de [la] CFSE ordenándole descanso.

[…]

20. A la fecha del 26 de abril de 2021[,] la [] [señora Méndez Ruiz] no había sido dada de alta por la CFSE.[6]

Así pues, el Tribunal de Primera Instancia resolvió que el despido de la apelada fue injustificado, arbitrario y caprichoso debido a que Techno Plastics no cumplió con el Art. 5-A de la Ley Núm. 45, *supra*. En consecuencia, el foro primario ordenó a la apelante a: (1) reinstalar a la señora Méndez Ruiz al puesto de trabajo que ocupaba al mes de abril de 2021; (2) pagarle los salarios dejados de percibir desde el 26 de abril de 2021 hasta la fecha de su restitución; (3) pagarle una mesada por $18,334.14, y (4) satisfacer una partida equivalente al 15% del total

---

[6] *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Apéndice de la Apelación, págs. 319-334.

adjudicado por concepto de honorarios de abogado. Asimismo, el Tribunal de Primera Instancia señaló una conferencia con antelación a juicio para dirimir lo relacionado con la prueba de daños y perjuicios.

Inconforme con el dictamen del foro primario, el 23 de marzo de 2023, Techno Plastics acudió al Tribunal de Apelaciones mediante una *Apelación*. Dicho recurso fue denegado el 2 de mayo de 2023 bajo la premisa de que la *Sentencia Sumaria Parcial* del Tribunal de Primera Instancia era realmente una resolución interlocutoria no revisable. No obstante, el 30 de noviembre de 2023, este Tribunal emitió una *Sentencia* en el caso CC-2023-319 para revocar dicha determinación. Allí concluimos que la *Sentencia Sumaria Parcial* del foro primario gozaba de finalidad y, por tanto, era revisable por vía del recurso de apelación.

Devuelto el caso al foro apelativo intermedio, el 16 de febrero de 2024, la apelada presentó un *Alegato en oposición a Apelación*. Tras evaluar los escritos de las partes, el 2 de abril de 2024, el Tribunal de Apelaciones emitió una *Sentencia* en la que confirmó lo resuelto por el Tribunal de Primera Instancia.

En desacuerdo, el 22 de abril de 2024, la apelante presentó ante este Foro un recurso de *Apelación* y señaló los errores siguientes:

> **PRIMER ERROR**: Erró el [Tribunal de Apelaciones] al sostener la determinación del [Tribunal de Primera Instancia] de no seguir el mandato de la jurisprudencia precedente que interpreta el Art[.] [] 5-A de la Ley [Núm.] 45-1935, [según enmendada], y en su lugar adoptar como derecho aplicable una

opinión disidente que fue expresamente rechazada por la mayoría de nuestro Honorable Tribunal Supremo, en clara violación al principio de [s]*tare decisis*.

**SEGUNDO ERROR**: Erró el Tribunal de Apelaciones al concluir que Techno Plastics no cumplió con las disposiciones del Art[.] [] 5-A de la Ley [Núm.] 45-1935, [según enmendada], para poder cesantear correctamente a la [] [señora Méndez Ruiz]. Esto sin apoyo jurisprudencial o estatutario.

**TERCER ERROR**: Erró el [Tribunal de Apelaciones] al sostener la determinación del [Tribunal de Primera Instancia de] que la Ley de Transformación y Flexibilidad Laboral no es de aplicación a los hechos del caso.

**CUARTO ERROR**: Erró el Tribunal de Apelaciones al confirmar la Sentencia [Sumaria] Parcial dictada por el Tribunal de Primera Instancia, esto luego de haber determinado la improcedencia del pago de [la] mesada[,] constituyendo una revocación parcial de la Sentencia [Sumaria Parcial] dictada por el [Tribunal de Primera Instancia].

Tras varias incidencias en el proceso apelativo, el recurso de *Apelación* fue expedido en reconsideración el 28 de junio de 2024. Recibidos los alegatos de las partes, el caso quedó sometido en los méritos. Siendo así, procedemos a resolver.

## II

### A. La Ley del Sistema de Compensaciones por Accidentes del Trabajo

La Constitución de Puerto Rico reconoce el derecho de todo trabajador a estar protegido contra riesgos a su salud o integridad personal en su empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. En aras de viabilizar el cumplimiento de este derecho constitucional, la Asamblea Legislativa aprobó la Ley Núm. 45, 11 LPRA sec. 1 *et seq.*, la cual provee a los trabajadores un sistema de seguridad

social por lesiones en el trabajo. Art. 1-A de la Ley Núm. 45, 11 LPRA sec. 1a. Se trata, pues, de un estatuto de carácter remedial que crea un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos o de enfermedades ocupacionales. Rodríguez v. Méndez & Co., 147 DPR 734, 739 (1999).

Como parte de las medidas estatuidas por este sistema de protección social, se encuentra el Art. 5-A de la Ley Núm. 45, *supra*. Rivera v. Blanco Vélez Stores, 155 DPR 460, 466 (2001). Específicamente, el referido artículo le impone al patrono la obligación de reservar el empleo que desempeñaba un obrero y de reinstalarlo al mismo cuando por razón de un accidente o enfermedad ocupacional éste se encuentra inhabilitado para trabajar. Art. 5-A de la Ley Núm. 45, *supra*. Dicha obligación del patrono está supeditada a que se cumplan las siguientes condiciones:

> (1) Que el obrero o empleado [le] requiera al patrono [] que lo reponga en su empleo dentro del término de quince (15) días, contado [] a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento, [] siempre y cuando [] dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente, o seis (6) meses en el caso de patronos con quince (15) empleados o menos a la fecha del accidente; (2) [Q]ue el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y (3) [Q]ue dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. […].

**Si el patrono no cumpliere con las disposiciones de este artículo vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado.** El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento [] [establecido en la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, conocida como Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 *et seq*.]. (Énfasis suplido). Art. 5-A de la Ley Núm. 45, *supra*.

El objetivo principal de esta disposición es prevenir que un patrono despida sin justa causa a un empleado acogido al término de reserva de empleo. Santos *et al*. v. Lederle, 153 DPR 812, 822 (2001). No obstante, el aludido término no es indefinido. Íd., págs. 822-823. Este trata de un término de caducidad que no admite interrupción y que comienza a decursar desde el momento del accidente o enfermedad laboral. Íd., pág. 823. Transcurrido el periodo de reserva de empleo, cesa la obligación del patrono de preservar la relación de empleo con el obrero lesionado si éste no ha sido dado de alta por la CFSE. Rivera v. Blanco Vélez Stores, *supra*, pág. 469. Cabe señalar que, al delimitar el término de reserva de empleo, el legislador estableció un balance entre los intereses del empleado lesionado (proteger el derecho a retener su empleo) y los intereses económicos del patrono (evitar que deba reservar el empleo indefinidamente). Cuevas v. Ethicon Div. J&J Prof. Co., 148 DPR 839, 847 (1999); Torres v. Star Kist Caribe, Inc., 134 DPR 1024, 1033 (1994).

Para que se active la protección instituida en el Art. 5-A de la Ley Núm. 45, *supra*, es necesario que el obrero haya estado inhabilitado para trabajar y su ausencia autorizada por la CFSE. Rodríguez v. Méndez & Co., *supra*, pág. 743. No obstante, cuando dicha dependencia determina que un empleado puede regresar a trabajar con derecho a recibir tratamiento médico (o sea, en CT y no en descanso), el empleado no está autorizado a ausentarse bajo circunstancias normales. Íd. En otras palabras, el Art. 5-A de la Ley Núm. 45, *supra*, entra en función cuando un empleado se incapacita temporalmente por causa de un accidente ocupacional y, por tal razón, no puede asistir a su trabajo. Íd.

**B. La Ley de Indemnización por Despido sin Justa Causa**

La Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido sin Justa Causa (Ley de Despido Injustificado), 29 LPRA sec. 185a *et seq.*, tiene el propósito de proteger a los empleados de actuaciones arbitrarias del patrono mediante el establecimiento de remedios económicos que desalienten los despidos injustificados. Ortiz Ortiz v. Medtronic, 209 DPR 759, 770 (2022). Cónsono con su finalidad, dicha pieza legislativa dispone que todo empleado que trabaja para un patrono mediante remuneración, sin tiempo determinado, y que fuere despedido injustificadamente, tiene derecho a recibir una indemnización a tales efectos. Art. 1 de la Ley de Despido Injustificado, 29 LPRA sec.

185a. Véase también, <u>Ortiz Ortiz v. Medtronic</u>, *supra*, pág. 771. Esta indemnización es conocida como la "mesada" y constituye el remedio exclusivo disponible para los empleados que son despedidos sin justa causa, siempre y cuando no existan otras causas de acción independientes al despido. <u>Íd.</u>; <u>León Torres v. Rivera Lebrón</u>, 204 DPR 20, 36-37 (2020).

Hemos reconocido tres (3) excepciones a la norma general del "remedio exclusivo de la mesada", a saber: (1) los remedios adicionales concedidos por la conducta torticera del patrono, ajena a la mera violación de una disposición de las leyes del trabajo (<u>Rivera v. Security Nat. Life Ins. Co.</u>, 106 DPR 517, 527 (1977)); (2) los remedios adicionales provistos por leyes especiales (<u>Vélez Rodríguez v. Pueblo Int'l, Inc.</u>, 135 DPR 500, 511 (1994)), y (3) los remedios adicionales concedidos por un despido cuyo propósito e intención principal sea frustrar una clara política pública o algún derecho constitucional (<u>Soc. de Gananciales v. Royal Bank de P.R.</u>, 145 DPR 178, 192 (1998)). Véanse, además, <u>Romero *et als*. v. Cabrer Roig *et als*.</u>, 191 DPR 643, 651 esc. 6 (2014); <u>C.O.P.R. v. S.P.U.</u>, 181 DPR 299, 337-338 (2011).

De no satisfacerse ninguna de las referidas excepciones, el empleado sólo será acreedor del pago de la mesada. <u>C.O.P.R. v. S.P.U.</u>, *supra*, pág. 338. Esto se debe a que "conceder una indemnización al amparo de dos (2) leyes distintas que tienen los mismos elementos, criterios

y dependen de la misma prueba, penalizaría al patrono dos (2) veces por un solo acto". <u>Santiago Ortiz v. Real Legacy et al.</u>, 206 DPR 194, 210 (2021) (citando a <u>Belk v. Martínez</u>, 146 DPR 215, 241 (1998)).  Y es que,

> cuando un trabajador es víctima de una violación mayor a un mero despido sin justa causa, las protecciones que le reconocen las disposiciones de legislación social aplicables al caso en particular son, asimismo, superiores al remedio de la mesada, que constituye la única y exclusiva protección que le ampara al empleado que es objeto de un despido injustificado.  <u>Santiago Ortiz v. Real Legacy et al.</u>, *supra*, pág. 210 (citando a <u>S.L.G. Afanador v. Roger Electric Co., Inc.</u>, 156 DPR 651, 668 esc. 10 (2002)).  (Bastardilla omitida).

Por otro lado, la fórmula para calcular la mesada dependerá en gran medida de la fecha de contratación del empleado. Art. 1 de la Ley de Despido Injustificado, *supra*. Así pues, aquel obrero contratado previo a la vigencia de la Ley Núm. 4-2017, según enmendada, conocida como Ley de Transformación y Flexibilidad Laboral (Ley de Flexibilidad Laboral), 29 LPRA sec. 121 *et seq.*, es acreedor de una indemnización que se calculará tomando en cuenta, entre otros factores, los años de servicio acumulados en el trabajo.[7]  No obstante, para un empleado contratado a

---

[7] Específicamente, para computar el monto de la indemnización correspondiente a los **empleados contratados previo** a la aprobación de la Ley Núm. 4-2017, según enmendada, conocida como Ley de Transformación y Flexibilidad Laboral (Ley de Flexibilidad Laboral), 29 LPRA sec. 121 *et seq.*, se acude a la versión de la Ley de Despido Injustificado antes de las enmiendas. Al respecto, la referida disposición establecía que:

> "Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, designado en lo sucesivo como el establecimiento, donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono, además del sueldo que hubiere devengado:

partir de la aprobación de la Ley de Flexibilidad Laboral,

la indemnización por despido injustificado estará limitada

a un tope, el cual en ningún caso excederá el sueldo

correspondiente a nueve (9) meses.[8]  Art. 1 de la Ley de

Despido Injustificado, *supra*.

_____

(a)  el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a seis (6) meses si el despido ocurre luego de los quince (15) años de servicio;

(b)  una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres (3) semanas por cada año de servicio, luego de haber completado quince (15) años o más de servicio".

Art. 1 de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido sin Justa Causa (Ley de Despido Injustificado), 29 LPRA ant. sec. 185a.

[8]  En particular, el Art. 1 de la Ley de Despido Injustificado, 29 LPRA sec. 185a, dispone, en lo pertinente, lo siguiente:

"Todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono por concepto de indemnización por despido lo siguiente:

(a) [u]na cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado; y

(b) [u]na cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.

En ningún caso la indemnización requerida bajo esta Ley excederá el sueldo correspondiente a nueve (9) meses de sueldo. El tope de nueve (9) meses no será de aplicación a empleados contratados previo a la vigencia de la "Ley de Transformación y Flexibilidad Laboral". La indemnización de tales empleados, en caso de un despido injustificado, se calculará utilizando el estado de derecho previo a la entrada en vigor de la "Ley de Transformación y Flexibilidad Laboral".

[…]

Las disposiciones de este Artículo, según enmendado, por la "Ley de Transformación y Flexibilidad Laboral", tendrán vigencia desde la fecha de aprobación de dicha Ley".

Amerita señalar que, según se ha establecido doctrinalmente, en nuestro ordenamiento no existe una prohibición absoluta en contra del despido de un empleado. Ortiz Ortiz v. Medtronic, *supra*, pág. 771; Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 230 (2015). Así pues, siempre y cuando haya justa causa, se permite el despido sin que el patrono incurra en responsabilidad legal por dicho proceder. R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, [s. Ed.], rev. 2021, pág. 133. Aun cuando la Ley de Despido Injustificado no define en concreto lo que constituye un despido sin justa causa, el estatuto ilustra ciertos escenarios que liberan al patrono de responsabilidad. Ortiz Ortiz v. Medtronic, *supra*, págs. 771-772; León Torres v. Rivera Lebrón, *supra*, pág. 37. Algunos de estos supuestos están basados en conducta atribuible al trabajador, mientras que otros son atribuibles al patrono (por "razones económicas") debido al cierre, reorganización o reducción empresarial. Ortiz Ortiz v. Medtronic, *supra*, pág. 772; León Torres v. Rivera Lebrón, *supra*, pág. 37.

En lo concerniente a la conducta del empleado, se considerará justa causa para el despido si éste incurre: (1) en un patrón de conducta impropia o desordenada; (2) en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente, o (3) en violaciones reiteradas de las reglas y reglamentos

razonables establecidos para el funcionamiento de la empresa siempre que se le haya suministrado oportunamente copia escrita de los mismos. Art. 2 de la Ley de Despido Injustificado, 29 LPRA sec. 185b. Véase, además, Ortiz Ortiz v. Medtronic, *supra*, pág. 772; Indulac v. Unión, 207 DPR 279, 299 (2021); León Torres v. Rivera Lebrón, *supra*, pág. 37; González Méndez v. Acción Social *et al.*, 196 DPR 213, 231 (2016). No obstante, los supuestos de despido por justa causa atribuibles al empleado y al patrono sólo representan ejemplos de los escenarios que pueden dar margen a un despido. SLG Torres-Matundan v. Centro Patología, 193 DPR 920, 930 (2015).

Lo anterior obedece a que la Ley de Despido Injustificado "no pretende, ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia". Íd. (citando Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001)). Dicho de otra forma, la enumeración de las causales que se consideran justa causa, según la Ley de Despido Injustificado, no es taxativa. SLG Torres-Matundan v. Centro Patología, *supra*, pág. 930.

Consecuentemente, los patronos tienen libertad para adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían

conllevar el despido como sanción. Íd., págs. 930-931.
Hemos expresado que cuando un patrono despide a un empleado
por un supuesto no incluido en la Ley de Despido
Injustificado, nuestro análisis para determinar si hubo
justa causa debe estar dirigido a identificar si el mismo
fue motivado por razones legalmente prohibidas, se hizo
por capricho del patrono o sin razón vinculada con el buen
y normal funcionamiento del establecimiento. Íd., pág. 931.
Véase, además, Art. 2 de la Ley de Despido Injustificado,
*supra*.

Finalmente, el esquema estatutario de la Ley de Despido
Injustificado establece una presunción de que todo despido
es injustificado y le impone al patrono el deber de
demostrar, mediante preponderancia de la prueba, que hubo
justa causa para el mismo. Ortiz Ortiz v. Medtronic, *supra*,
pág. 774. No obstante, para disfrutar de dicha presunción,
el demandante tiene la obligación de aportar prueba que
establezca los hechos básicos que dan lugar a la
presunción, a saber: (1) que fue empleado por tiempo
indeterminado del patrono; (2) que recibía remuneración
por su trabajo, y (3) que fue despedido de su puesto. Íd.,
pág. 775. Véase, además, Rivera Figueroa v. The Fuller
Brush Co., 180 DPR 894, 907 (2011). Una vez se activa la
presunción estatutaria a favor del obrero, el patrono tiene
la obligación de presentar prueba para rebatir la
presunción y, además, persuadir al juzgador de los hechos

mediante preponderancia de la evidencia. <u>Ortiz Ortiz v.</u> <u>Medtronic</u>, *supra*, pág. 775.

**III**

En su recurso de *Apelación*, Techno Plastics esboza cuatro (4) señalamientos de error. Para una mejor comprensión de los asuntos a resolver, abordaremos el primer error por separado, mientras el segundo y el cuarto error en conjunto. Mediante la discusión y análisis de los mencionados errores, huelga atender el tercer error señalado.

En el primer error señalado la apelante sostiene que el Tribunal de Apelaciones falló al confirmar la determinación del Tribunal de Primera Instancia debido a que este último no aplicó el precedente que interpreta el Art. 5-A de la Ley Núm. 45, *supra*, y, en su lugar, adoptó como norma una Opinión disidente, lo cual constituye una violación al principio de *stare decisis*. Específicamente, Techno Plastics argumenta que los foros inferiores eligieron descartar el estado de derecho establecido por una mayoría de este Tribunal en <u>Torres v. Star Kist Caribe,</u> <u>Inc.</u>, *supra*, y sustituirlo con una teoría análoga a la Opinión disidente de ese mismo caso. Resulta necesario analizar el precedente establecido en <u>Torres v. Star Kist</u> <u>Caribe, Inc.</u>, *supra*, para distinguirlo de los hechos específicos ante nuestra consideración y determinar si ofrece una solución adecuada a las controversias planteadas. Veamos.

En <u>Torres v. Star Kist Caribe, Inc.</u>, *supra*, este Foro atendió una controversia relacionada con una empleada que se reportó a la CFSE por una enfermedad ocupacional y a la que se le ordenó, en varias ocasiones, descanso y tratamiento mientras trabajaba. Cuando finalmente la empleada fue dada de alta por la CFSE y solicitó reinstalación a su puesto de trabajo, Star Kist Caribe, Inc., se negó bajo el fundamento de que el término de reserva de empleo había caducado. Tras su despido, la empleada presentó una demanda en contra del patrono por no haberla reinstalado luego de cesar su incapacidad. El Tribunal de Primera Instancia emitió una sentencia parcial ordenándole a Star Kist Caribe, Inc., reponer a la empleada en su empleo. El referido foro entendió que el término de reserva de empleo se interrumpió en las instancias en que la empleada regresó a trabajar mientras recibía tratamiento médico de la CFSE.

Luego de un análisis del Art. 5-A de la Ley Núm. 45, *supra*, este Tribunal, por voz de la entonces Jueza Asociada Naveira Merly, revocó la interpretación del foro primario por entender que los periodos en los cuales la CFSE autorizó a la empleada a recibir tratamiento médico mientras trabajaba no interrumpían el término de doce (12) meses de reserva de empleo. Específicamente, se pautó que,

> el hecho de que un empleado que se encuentra incapacitado temporalmente por razón de una enfermedad o accidente ocupacional regrese al trabajo mientras se encuentra en tratamiento médico [] [de la CFSE] (CT), no tiene el efecto de interrumpir el término de doce (12) meses que

establece el Art. 5-A [de la Ley Núm. 45,] *supra.* Este período es uno de caducidad que no puede interrumpirse de forma alguna. (Bastardilla omitida).

Resulta meritorio señalar que cuando resolvimos Torres v. Star Kist Caribe, Inc., *supra*, el Art. 5-A de la Ley Núm. 45, *supra*, no se había enmendado para equiparar la autorización para trabajar con derecho a tratamiento médico con el alta definitiva que emite la CFSE.[9] Este dato es importante debido a que la conclusión a la que llegó una mayoría de este Tribunal en ese momento, estuvo basada, precisamente, en el hecho de que una vez caducó el término de reserva de empleo, la empleada todavía se encontraba recibiendo tratamiento médico de la CFSE de manera recurrente. Es decir, no había sido dada de alta y su condición o enfermedad ocupacional continuaba. Tan es así que, meses después de la fecha en que venció el término de reserva de empleo sin que Star Kist Caribe, Inc., la hubiera despedido y mientras continuaba recibiendo tratamiento médico de la CFSE, la empleada volvió a estar fuera del trabajo por seis meses y medio. Ciertamente, para la fecha en que ocurrió el despido, la empleada no

---

[9]    Se desprende de la Exposición de Motivos de la Ley Núm. 162-2004, que el Art. 5-A de la Ley Núm. 45 del 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley Núm. 45), 11 LPRA sec. 7, fue enmendado para aclarar que el término dispuesto para que un empleado lesionado solicite su reinstalación en el empleo **comienza a transcurrir desde la fecha en que es dado de alta por la CFSE <u>o</u> desde que dicha agencia lo autoriza a trabajar con derecho a tratamiento**. El propósito de esta enmienda fue equiparar la autorización para trabajar con derecho a tratamiento (CT) con el alta y eliminar la incertidumbre respecto al momento en que procede la reinstalación de un obrero a su empleo. Exposición de Motivos de la Ley Núm. 162-2004 (2004 [Parte 1] Leyes de Puerto Rico 1037-1038).

estaba habilitada para trabajar, pues todavía se encontraba fuera del trabajo. Cuando finalmente la CFSE le dio el alta definitiva y ésta solicitó su reinstalación al trabajo, **habían transcurrido más de dos (2) años desde la fecha del accidente o enfermedad ocupacional.**

En la Opinión disidente emitida por el entonces Juez Asociado Fuster Berlingeri, éste expresó que el término de reserva de empleo debió interrumpirse, en consideración a que la empleada no estuvo doce (12) meses consecutivos fuera del trabajo y a que se reintegró, ocasionalmente, a sus labores mientras recibía tratamiento médico ambulatorio.

Al contrastar los hechos del caso de Torres v. Star Kist Caribe, Inc., *supra*, con los hechos ante nuestra consideración, estamos convencidos de que difieren sustancialmente. En el caso ante nos, la señora Méndez Ruiz sufrió un accidente laboral el **10 de julio de 2018** que le requirió acudir a la CFSE. Tras ser evaluada, la CFSE le ordenó en varias ocasiones descanso y tratamiento médico mientras trabajaba. **Para el 6 de julio de 2019, fecha en que caducó el término de reserva de empleo, la apelada se encontraba trabajando para Techno Plastics con una autorización de la CFSE. Más importante aún, desde el 28 de enero de 2019 hasta el 10 de febrero de 2021 la señora Méndez Ruiz trabajó ininterrumpidamente para la apelante.**

Entonces, si la apelada regresó a trabajar antes de que caducara el término de reserva de empleo y, además, trabajó ininterrumpidamente para Techno Plastics por más de dos (2) años luego de esto, ¿cómo es que fue despedida el 26 de abril de 2021 **bajo el fundamento de que el periodo de reserva de empleo había terminado?  No lo entendemos.** Es un hecho incontrovertido que **el 10 de febrero de 2021,** la señora Méndez Ruiz regresó a la CFSE tras sufrir una recaída de la condición ocupacional que desarrolló mientras trabajó para la apelante.  También, es cierto que posterior a esta fecha la apelada fue evaluada de manera recurrente por la CFSE y se le ordenó recibir tratamiento médico en descanso o en CT.  No obstante, cabe preguntarse si estos eventos por sí solos son suficientes para que Techno Plastics despidiera a la señora Méndez Ruiz. **Contestaremos esta interrogante más adelante.**

Hemos expresado que las leyes no se interpretan ni aplican en el vacío.  Lucero v. San Juan Star, 159 DPR 494, 506 (2003); Valentín v. Housing Promoters, Inc., 146 DPR 712, 716 (1998); Román Cruz v. Díaz Rifas, 113 DPR 500, 505 (1982).  Tampoco todos los casos son iguales, aunque aparenten serlo.  Íd.  Por esa razón, en ocasiones los hechos exigen un tratamiento distinto en aras de lograr un resultado justo.  Íd.  En otras palabras, según los hechos, en algunos casos aplicaremos una disposición enérgicamente y en otras seremos más flexibles.  Lucero v. San Juan Star, *supra*, pág. 506; Valentín v. Housing Promoters, Inc.,

*supra*, pág. 716; Román Cruz v. Díaz Rifas, *supra*, pág. 505. No obstante, antes de así actuar, debemos conocer las circunstancias o hechos particulares que movieron al tribunal a adoptar determinado curso de acción o interpretación sobre determinado asunto. Así lo establece la doctrina sobre el análisis y la aplicación del precedente judicial o *stare decisis*.

Conscientes de lo anterior, se detallan las diferencias más importantes entre el precedente invocado por la apelante y el caso de autos. Específicamente, en Torres v. Star Kist Caribe, Inc., *supra*, **el término de reserva de empleo venció sin que la empleada fuera dada de alta por la CFSE**. Para entonces, el estado de derecho prevaleciente no equiparaba la autorización para trabajar con derecho a tratamiento médico con el alta definitiva. Con ese escenario en mente fue que el término de reserva de empleo caducó sin que Star Kist Caribe, Inc., viniera obligado a reinstalar a la empleada en su empleo. De igual forma, **para la fecha en que ésta fue despedida, todavía se encontraba recibiendo tratamiento médico en descanso. No fue sino hasta pasado poco más de dos (2) años desde la fecha del accidente laboral que la CFSE dio de alta a la empleada y ésta le solicitó a Star Kist Caribe, Inc., su reinstalación.** Estos hechos particulares son los esenciales en el llamado precedente jurisprudencial, pues como acertadamente resolvió este Tribunal hace años, el término

de reserva de empleo no admite interrupción por ser uno fatal o de caducidad.

**En contraste, en el caso que nos ocupa la apelada fue reinstalada a su puesto de trabajo antes de que venciera el término de reserva de empleo. Además, trabajó ininterrumpidamente para Techno Plastics por poco más de dos (2) años luego de que la CFSE la autorizó a trabajar con derecho a tratamiento médico.**

Establecidas las diferencias entre las circunstancias y los hechos particulares de ambos casos, concluimos que **no le asiste la razón a Techno Plastics** al sostener que los foros inferiores erraron al no aplicar el precedente establecido en Torres v. Star Kist Caribe, Inc., *supra*, pues estamos ante unos hechos muy distintos que la norma allí pautada no atiende ni resuelve.

En su segundo señalamiento de error, la apelante argumenta que el Tribunal de Apelaciones se equivocó al concluir, sin apoyo jurisprudencial o estatutario, que ésta incumplió con las disposiciones del Art. 5-A de la Ley Núm. 45, *supra*, para cesantear correctamente a la señora Méndez Ruiz. Específicamente, basa su contención en que el despido de la apelada no fue injustificado debido a que no tenía la obligación de reservarle el empleo por un término adicional al dispuesto en el Art. 5-A de la Ley Núm. 45, *supra*. **Debemos precisar que, para resolver esta controversia no podemos limitar nuestro análisis a evaluar meramente si el término de reserva de empleo caducó o no.**

**Esto se debe a que, además de los hechos particulares del caso, existen unos aspectos de política pública que no podemos ignorar.**

Ciertamente, el Art. 5-A de la Ley Núm. 45, *supra*, obliga al patrono a reservar el empleo que desempeñaba el obrero al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a que se cumplan ciertas condiciones claramente definidas por el legislador, a saber: (1) que el empleado le requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contado a partir de la fecha en que fue dado de alta o fue autorizado a trabajar con derecho a tratamiento, siempre que dicha solicitud no se haga luego de transcurridos doce (12) meses desde la fecha del accidente; (2) que el empleado esté mental y físicamente capacitado para ocupar el empleo al momento de solicitar su reposición al mismo, y (3) que el empleo subsista al momento en que el empleado solicite su reposición.[10]

Ahora bien, los remedios que provee el Art. 5-A de la Ley Núm. 45, *supra*, se activan **exclusivamente** cuando el patrono incumple con lo establecido en la aludida disposición. De una lectura serena de su texto, podemos inferir razonablemente que el patrono incumple con su

---

[10] En cuanto a la tercera condición, se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro empleado. Se presumirá que el empleo estaba vacante cuando el mismo sea cubierto por otro empleado dentro de los treinta (30) días siguientes a la fecha en que se hizo la solicitud de reposición. Art. 5-A de la Ley Núm. 45, *supra*.

obligación cuando: (1) no reserva el empleo que desempeñaba el obrero al momento del accidente por el término establecido en ley; (2) no reinstala al obrero en su empleo tras éste haberlo solicitado previo al transcurso del término de doce (12) o seis (6) meses, según aplique, desde la fecha del accidente, y cuando está mental y físicamente capacitado para ocuparlo, y (3) no reinstala al empleado a pesar de que al momento en que solicita su reinstalación el empleo subsiste o se encuentra vacante.

De los autos del caso surge que Techno Plastics reservó el empleo que desempeñaba la señora Méndez Ruiz al momento del accidente. Más aún, la reinstaló al mismo antes de que caducara el término de doce (12) meses de la reserva de empleo. Para la fecha en que venció el referido periodo, la apelada ya había sido autorizada por la CFSE a trabajar con derecho a tratamiento y se encontraba trabajando para la apelante.[11] Empero, hay unos hechos medulares que no podemos dejar pasar por alto. Y es que, **el 10 de febrero de 2021,** la señora Méndez Ruiz se vio en la necesidad de regresar a la CFSE -tras sufrir una recaída en su condición- para recibir tratamiento médico adicional. Como resultado de esto, la apelada fue evaluada de manera recurrente por dicha agencia, y se le ordenó recibir tratamiento médico en descanso y mientras trabajaba **hasta que fue despedida por Techno Plastics el 26 de abril**

---

[11] Véase la nota al calce 9 a la pág. 20 de esta Opinión.

**de 2021 bajo el fundamento de que el término de reserva de empleo había culminado el 6 de julio de 2019.**

Valga señalar que una situación similar a la de autos ocurrió en Carrón Lamoutte v. Compañía de Turismo, 130 DPR 70, 79 (1992). Allí una mayoría de este Tribunal, haciendo referencia en una nota al calce a varias interpretaciones del Secretario del Trabajo y Recursos Humanos sobre el alcance del Art. 5-A de la Ley Núm. 45, *supra*, expresó que si después de la recuperación un empleado sufre una recaída sin que haya ocurrido un segundo accidente, la fecha del suceso original es la que se considerará para el cómputo de los doce (12) meses que contempla el Art. 5-A de la Ley Núm. 45, *supra*.[12] No obstante, aunque las interpretaciones del Secretario del Trabajo y Recursos Humanos tienen un valor persuasivo, no hemos encontrado en el texto de la Ley Núm. 45 referencia alguna que nos permita inferir que la intención del legislador al aprobar el estatuto haya sido que un patrono

---

[12] Cabe señalar que en el caso de Carrón Lamoutte v. Compañía de Turismo, 130 DPR 70, 77 (1992), el planteamiento medular que atendió este Tribunal fue si una corporación pública puede cesantear a un empleado que se ausenta por motivos de salud sin habérsele concedido la oportunidad de ser oído (en contravención al debido proceso de ley) en alguna etapa significativa del procedimiento administrativo. Este Foro determinó que la Compañía de Turismo no podía despedir a la obrera sin la celebración de una vista informal previa. Toda vez que la Compañía de Turismo no cumplió con las garantías procesales necesarias, este Tribunal revocó la sentencia recurrida y ordenó la reposición de la empleada a su empleo más el pago de los haberes y sueldos dejados de recibir. Además, su reinstalación se retrotrajo a la fecha en que la CFSE la dio de alta y la autorizó a regresar a su trabajo. Esta decisión se tomó sin menoscabo de que la Compañía de Turismo pudiera, de estimarlo procedente, comenzar un nuevo procedimiento de separación por incapacidad, según las normas establecidas en Torres Solano v. P.R.T.C., 127 DPR 499 (1990). Carrón Lamoutte v. Compañía de Turismo, *supra*, págs. 87-88.

pueda despedir a un empleado bajo las disposiciones del Art. 5-A de la Ley Núm. 45, *supra*, tras éste sufrir el recrudecimiento de una condición resultante de un accidente ocupacional previo que le requiere acudir a la CFSE para recibir tratamiento médico adicional. Al redactar y aprobar el estatuto el legislador guardó silencio en torno al procedimiento que debe seguir un patrono ante el escenario de una recaída como el antes descrito. Consecuentemente, en un caso como el que nos atañe, es indispensable analizar la totalidad de las circunstancias para impartir justicia de la mejor manera posible, teniendo como marco de referencia que la legislación protectora del trabajo es una de carácter remedial, por lo cual debemos interpretarla con liberalidad y amplitud para lograr sus propósitos.

Es cierto que una vez caduca el término de reserva de empleo sin que el obrero solicite su reinstalación, el patrono puede despedirlo sin que su actuación configure un despido injustificado. Sin embargo, también es cierto que el legislador no le dio al patrono una "carta en blanco" para justificar **de manera indefinida o a su conveniencia** el despido de un empleado. Como indicamos, la señora Méndez Ruiz fue reinstalada en su trabajo antes del vencimiento del término de reserva de empleo, lo cual supone que el puesto estaba vacante, y que la apelada estaba física y mentalmente capacitada para ocuparlo. Desde la fecha de su reinstalación hasta la fecha en que regresó a la CFSE

para recibir tratamiento médico adicional, trabajó ininterrumpidamente para la apelante por poco más de dos (2) años. Siendo así, para la fecha en que la señora Méndez Ruiz fue despedida, Techno Plastics no podía invocar como fundamento para su determinación el Art. 5-A de la Ley Núm. 45, *supra*, por el solo hecho de ésta haber sufrido una recaída con posterioridad a la fecha en que venció el periodo de reserva de empleo. Dentro de un adecuado balance entre los intereses de las partes, si este Tribunal avalara la justificación que utilizó la apelante para despedir a la apelada, colocaríamos en estado de indefensión a los empleados en similar situación, pues tendrían que escoger entre recibir tratamiento médico adicional y ser despedidos o dejar de recibir tratamiento médico adicional para evitar su despido.

Cabe señalar que, mientras la Ley Núm. 45 provee un remedio médico y económico por haber sufrido un accidente en el empleo -sin menoscabo de los remedios establecidos en el Art. 5-A de dicho estatuto-, la Ley de Despido Injustificado brinda un remedio económico por razón de un despido sin justa causa. Soc. de Gananciales v. Royal Bank de P.R., 145 DPR 178, 195 (1998). Siendo ambas leyes dos (2) estatutos con un ámbito de aplicabilidad distinto, puede ocurrir que un empleado que se acoja a los beneficios de la CFSE y que posteriormente se reinstale en su trabajo, sea cesanteado injustificadamente. Íd. En los casos apropiados, el empleado podría ser acreedor de la

indemnización establecida en la Ley de Despido Injustificado aun cuando previamente se hubiera acogido a los beneficios de la Ley Núm. 45. Íd.

En consideración a los hechos y circunstancias específicos que rodearon el despido de la señora Méndez Ruiz, **concluimos que, a pesar de que los remedios del Art. 5-A de la Ley Núm. 45,** *supra*, **no son de aplicación al presente caso** (debido a que Techno Plastics reservó el empleo que desempeñaba la apelada y la reinstaló al mismo conforme a la Ley Núm. 45), **sí lo son los de la Ley de Despido Injustificado. El hecho de regresar a la CFSE a recibir tratamiento médico adicional luego de transcurrido el término de reserva de empleo, por sí solo, no constituye justa causa para un despido. Por tanto, en ausencia de alguna otra justificación válida provista por la apelante, es forzoso concluir que claramente se trató de un despido injustificado.**

Finalmente, aun cuando Techno Plastics argumenta correctamente que la determinación del foro apelativo intermedio en cuanto a la improcedencia del pago de la indemnización bajo la Ley de Despido Injustificado debió haber constituido una revocación parcial de la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, resulta forzoso concluir que es precisamente este remedio exclusivo, mas no los remedios contemplados en el Art 5-A de la Ley Núm. 45, *supra*, el aplicable al caso ante nos. Como expresáramos, la inaplicabilidad del

Art 5-A de la Ley Núm. 45, *supra*, no exime de responsabilidad a la apelante en cuanto al remedio que deberá satisfacer por el despido injustificado de la señora Méndez Ruiz, al amparo de la Ley de Despido Injustificado.

**IV**

Por los fundamentos antes expresados, se confirma en parte y se revoca en parte la *Sentencia* emitida por el Tribunal de Apelaciones el 2 de abril de 2024. En consecuencia, se confirma aquella parte de la *Sentencia* en la que el aludido foro concluyó que la Ley de Flexibilidad Laboral es inaplicable. Sin embargo, se revoca aquella parte de la *Sentencia* en la que se dispuso: **(1)** que Techno Plastics no cumplió con las disposiciones del Art. 5-A de la Ley Núm. 45, *supra*, pues se desprende del expediente ante nuestra consideración que ésta reservó el empleo de la señora Méndez Ruiz y la reinstaló al mismo antes de que venciera el periodo de reserva de empleo; **(2)** que procedía el pago de los remedios establecidos en el Art. 5-A de la Ley Núm. 45, *supra*, y **(3)** que resulta improcedente el pago de la mesada.

Por consiguiente, se reinstala aquella parte de la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia el 7 de marzo de 2023 referente a que: **(1)** el despido de la señora Méndez Ruiz fue injustificado, por lo cual procede el pago de una indemnización a estos efectos, según lo dispone la Ley de Despido Injustificado, conocida como la mesada, la cual asciende a $18,334.14,

así como el 15% adjudicado por concepto de honorarios de abogado a favor de la apelada.  En consecuencia, se ordena a Techno Plastics a cumplir con lo aquí resuelto.

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Silmarie Méndez Ruiz<br><br>Apelada<br><br>v.<br><br>Techno Plastics Industries, Inc.<br><br>Apelante | AC-2024-23 | Apelación |

SENTENCIA

En San Juan, Puerto Rico a 26 de junio de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se confirma en parte y se revoca en parte la Sentencia emitida por el Tribunal de Apelaciones el 2 de abril de 2024. En consecuencia, se confirma aquella parte de la Sentencia en la que el aludido foro concluyó que la Ley Núm. 4-2017, según enmendada, conocida como Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 121 *et seq.*, es inaplicable. Sin embargo, se revoca aquella parte de la Sentencia en la que se dispuso: (1) que Techno Plastics Industries, Inc. (Techno Plastics o apelante) no cumplió con las disposiciones del Art. 5-A de la Ley Núm. 45 del 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley Núm. 45), 11 LPRA sec. 7, pues se desprende del expediente ante nuestra consideración que ésta reservó el empleo de la Sra. Silmarie Méndez Ruiz (señora Méndez Ruiz o apelada) y la reinstaló al mismo antes de que venciera el periodo de reserva de empleo; (2) que procedía el pago de los remedios establecidos en el Art. 5-A de la Ley Núm. 45, *supra*, y (3) que resulta improcedente el pago de la mesada.

Por consiguiente, se reinstala aquella parte de la Sentencia Sumaria Parcial emitida por el Tribunal de Primera Instancia el 7 de marzo de 2023 referente a que: (1) el despido de la apelada fue injustificado, por lo cual procede el pago de una indemnización a estos efectos, según lo dispone la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido sin Justa Causa, 29 LPRA sec. 185a *et seq.*, la cual asciende a $18,334.14, así como el 15% adjudicado por concepto de honorarios de abogado a favor de la apelada. En consecuencia, se ordena a la apelante a cumplir con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo