Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| Damaris Rodríguez Ovalle | | |
|---|---|---|
| Apelada | | ***CERTIORARI,* acogida como APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| vs. | TA2026CE00035 | Civil Núm.: SJ2024CV10404 |
| Bright Beginnings Day Care and Learning Academy Corp., y Otros | | Sobre: Despido Injustificado Ley 80-1976, según enmendada, Represalias Ley 115-1991, según Enmendada |
| Apelantes | | |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparece Bright Beginnings Day Care and Learning Academy Corp (Bright Beginnings o parte apelante), quien solicita la revocación de la Sentencia Enmendada *Nunc Pro Tunc*, emitida 7 de enero de 2026[1], por el Tribunal de Primera Instancia, Sala Superior (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró Con Lugar la Querella sobre despido injustificado y represalia instada en contra de la parte apelante. En consecuencia, resolvió que la señora Omayra Rodríguez Ovalle (Sra. Rodríguez Ovalle o parte apelada) tiene derecho a recibir el pago de $72,168.00, en concepto de doble penalidad por los sufrimientos y las angustias mentales experimentados, y los salarios dejados de devengar.

---

[1] Notificada en igual fecha.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, confirmamos la Sentencia impugnada, por los fundamentos que expondremos a continuación.

## I.

El 8 de noviembre de 2024, la Sra. Rodríguez Ovalle radicó una Querella sobre procedimiento sumario de reclamación laboral, y despido injustificado por represalia en contra de la parte apelante. En síntesis, relató que sufrió una caída en su trabajo[2] que afectó su espalda, por lo que, acudió el 29 de mayo de 2024, a la Corporación del Fondo del Seguro del Estado (CFSE). No obstante, especificó que el 3 de junio de 2024, se ausentó a sus labores por motivos del dolor que aún padecía, según le notificó a la Sra. Yahaira Díaz, quien era su supervisora. Sin embargo, aseveró que, al día siguiente, su patrono le remitió una carta, en la cual dio por terminado su contrato. En vista de ello, reclamó la compensación económica en concepto de daños por angustias mentales, salarios dejados de devengar, y el pago del beneficio concedido por el Programa de Asistencia Laboral (PAL), entre otros extremos.

Por su parte, 2 de diciembre de 2024, Bright Beginnings interpuso su Contestación a la Querella. En esencia, aseveró que la apelada no presentó un caso *prima facie* de despido injustificado ni de represalia. Argumentó que, esta no evidenció que el patrono lesionó sus derechos. Adujo, además, que la empleada se ausentaba continuamente y sin ofrecer justificación al respecto. Por otro lado, en cuanto a la compensación por el PAL, explicó que dicho beneficio no se otorgaba automáticamente, pues el patrono decidía si lo solicitaba o no. Asimismo, advirtió que su concesión

---

[2] De acuerdo con las alegaciones contenidas en la reclamación, la parte apelada comenzó a trabajar en dicho centro en el mes de enero de 2021.

dependía de que el empleado cumpliera con las disposiciones contractuales y la retención de su empleo.

Examinada la totalidad de la prueba que desfiló en el juicio[3], el 7 de enero de 2026, el foro primario dictó una Sentencia Enmendada *Nunc Pro Tunc*[4], en la cual declaró Con Lugar la Querella instada por la parte apelada, y consecutivamente formuló las siguientes determinaciones de hechos:

> ***1. La querellante es Damaris A. Rodríguez Ovalle y fue empleada de la parte querellada Bright Beginnings Day Care and Learning Academy Corp. (en lo sucesivo, "Bright Beginnings").***
>
> ***2. Bright Beginnings es un centro de cuido que recibe menores desde 2 meses de edad hasta preescolares de 4 años y 11 meses de edad.***
>
> ***3. La querellante comenzó a trabajar en Bright Beginnings el 1ro de febrero de 2021 como Asistente de Maestra en el grupo denominado Bright Toddlers 2.***
>
> ***4. El Sr. Michael Ayala es el dueño de Bright Beginnings y fue el supervisor de más alta jerarquía de la querellante. Mientras, la supervisora inmediata de la querellante era la Sra. Yahaira Díaz Cruz, Gerente de Operaciones.***
>
> ***5. La querellante tenía un turno de trabajo a tarea completa de lunes a viernes de 7am a 4:30 pm. El ingreso más alto devengado por la querellante fue $9.50 por hora y cobraba quincenal.***
>
> ***6. El patrono sostiene que en el 2022 emitió unos memoranda sobre alegado patrón de ausencias y tardanzas de la querellante. (Exhibits 1-3 de la querellada). La querellante niega haberlos recibido y bajo juramento sostuvo que la firma en los memos no es la suya, identificando variaciones en comparación con su firma en otros documentos.***

---

[3] Tras una serie de acontecimientos procesales, el foro señaló la celebración del juicio para el 17 y el 18 de septiembre de 2025.

[4] Surge del expediente ante nos que, el 30 de diciembre de 2025, el foro primario dictó y notificó la Sentencia. No obstante, el 31 de diciembre de 2025, emitió una Sentencia Enmendada *Nunc Pro Tunc,* notificada el 7 de enero de 2026, para precisar las cuantías concedidas a modo de desglose. Oportunamente, el 7 de enero de 2026, la Sra. Rodríguez Ovalle presentó una Moción en Solicitud de Enmienda la Sentencia *Nunc Pro Tunc*, para peticionar que se incluyeran las siguientes cuantías en la parte dispositiva: (1) $600.00 en concepto de bono de Navidad; (2) $72,168.00 en concepto de penalidad de doble de las sumas por concepto de daños y perjuicios, así como los salarios dejados de devengar. Atendida su solicitud, el 7 de enero de 2026, el TPI dictaminó y notificó la Sentencia, objeto de revisión judicial, con las partidas otorgadas a la parte apelada, según esta lo solicitó.

7. De conformidad con los talonarios, desde enero de 2023 el patrono comenzó a darle un trato a la querellante bajo servicios profesionales, por lo que comenzó a descontarle el 10% de su paga y la querellante tuvo que encargarse de pagar su seguro social. (Exhibit Estipulado 8).

8. El 17 de agosto de 2023, el patrono le informó a la querellante que la relación de empleo pasaría a ser una de servicios profesionales y le requirió firmar un contrato de servicios del personal, luego de lo cual continuó descontándole el 10% de su paga. (Exhibit Estipulado 2).

9. Este contrato de 17 de agosto de 2023, en su sexta cláusula (pág. 3 del contrato), contenía un beneficio de 10 días por enfermedad y 12 días para vacaciones anuales.

10. A pesar del cambio notificado por el patrono, las funciones y la naturaleza del trabajo que realizaba la querellante se mantuvieron inalteradas, compatibles con una relación de empleada y patrono. El patrono, a través de la Sra. Yahaira Díaz, impartía las instrucciones del horario y el trabajo diario en el centro de cuido, y supervisaba las labores. El patrono también proveía el uniforme de trabajo a la querellante.

11. La querellante nunca sometió facturas de trabajo. Todos los días registraba la entrada y salida en un ponchador.

12. En una certificación del 15 de noviembre de 2023 la supervisora directa de la querellante, Sra. Yajaira Díaz, certificó que la querellante era empleada del centro de cuido Bright Beginners. Indicó, además, lo siguiente: "La empleada lleva laborando con nosotros sobre 1 año y 7 meses y ha obtenido formalmente su permanencia con nuestra empresa." (Exhibit 5 de la querellante).

13. En una Hoja de Verificación de Empleo del 5 de abril de 2024, la Sra. Yajaira Díaz, como Directora de Operaciones, indicó que la querellante tenía un empleo permanente como maestra de Bright Beginnings y que tenía derecho a vacaciones o licencia de enfermedad. (Exhibit 6 de la querellante).

14. El patrono cumplimentó un comprobante de retención W-2-PR a nombre de la querellante para los años 2023 y 2024, y para los mismos años cumplimentó también el formulario 480.6SP. (Exhibits Estipulados 10 y 11).

15. Una de las medidas que el Congreso de los Estados Unidos aprobó para incentivar la economía luego del cierre ("lockdown") provocado por la pandemia del COVID-19 fue establecer un fondo conocido como Child Care Stabilization

*Fund* como parte del *Plan de Rescate Americano ARPA, por sus siglas en inglés.*

16. *En Puerto Rico, se conoció el fondo antes indicado como Programa de Asistencia Laboral (PAL) en cuanto aplicaba a centros de cuido. Ese fondo proveía un incentivo para los empleados de dichos centros, que incluía hasta un máximo de $400 mensuales para plan médico, hasta un máximo de $200 mensuales para gastos asociados a transportación y un bono de retención de empleados regulares de $4,000.00 anuales distribuidos en $1,000.00 trimestrales.*

17. *Bright Beginnings solicitó los fondos del Programa de Asistencia Laboral (PAL) para su empleomanía en el cual la querellante participó. Para optar por el PAL, el patrono representó que la querellante era empleada, no contratista.*

18. *El patrono le pagó a la querellante los $200 de gasolina durante los meses de septiembre de 2023 hasta abril de 2024, pero no le pagó el mes de mayo de 2024, sin exponer una razón justificada para la omisión que surja de la normativa sobre el PAL.*

19. *La querellante recibió el primer pago del incentivo trimestral de $1,000 con un cheque con fecha de septiembre de 2023, del cual se le descontaron las partidas usuales del ingreso de empleadas, incluyendo seguro social, medicare y contribuciones sobre ingresos, para un pago neto de $804.65. El patrono no le pagó a la querellante los restantes $3,000 del referido incentivo, sin exponer una razón justificada para la omisión que surja de la normativa sobre el PAL.*

20. *La querellante sufrió un "accidente laboral" en agosto de 2023, ocurrido cuando puso a dormir a una niña bajo su cuidado en Bright Beginnings. Este accidente fue relacionado por la Corporación del Fondo del Seguro del Estado (en adelante, el Fondo).*

21. *La querellante estuvo en descanso hasta el 19 de agosto de 2023 y comenzó tratamiento médico en CT (mientras trabaja) el 20 de agosto de 2023, en el que estuvo durante un año debido al dolor de espalda. (Exhibit Estipulado 5).*

22. *La querellante acudió a citas y terapias provistas por el Fondo durante los meses subsiguientes al accidente laboral, para las cuales cumplimentó con antelación las solicitudes para ausentarse. En algunos de estos documentos, por ejemplo, el de 24 de enero de 2024 y 2 de febrero de 2024, el patrono marcó que no autorizaba la solicitud aun cuando la*

*razón era por enfermedad debido a una cita en el Fondo. (Exhibit Estipulado 7).*

*23. El patrono no le pagó a la querellante las horas utilizadas por esta para asistir a las citas del Fondo.*

*24. Desde el 16 de mayo de 2024, la querellante comenzó a reclamarle al patrono sobre la falta de pago del incentivo del PAL, a través de mensajes escritos al dueño, Sr. Michael Ayala. (Exhibit 4 de la querellante).*

*25. La querellante sostuvo que hizo una llamada a ACUDEN para hacer preguntas sobre el PAL. Esto le fue informado a Yahaira Díaz.*

*26. El miércoles, 29 de mayo de 2024, la querellante se sometió a un bloqueo como parte del tratamiento del Fondo, por lo que estuvo en descanso hasta el 1 de junio de 2024, comenzando tratamiento médico en CT (mientras trabaja) el día 2 de junio de 2024. (Exhibit Estipulado 4).*

*27. El domingo, 2 de junio de 2024, la querellante le notificó a la Sra. Yahaira Díaz, su supervisora, que no podría ir a trabajar el lunes 3 de junio y que iría el martes si se sentía bien. (Exhibit 3 de la querellante).*

*28. La Sra. Díaz recibió el mensaje y se lo comunicó al Sr. Ayala. La querellante se presentó a trabajar el martes, 4 de junio de 2024.*

*29. El patrono no le pagó a tiempo a la querellante la quincena que venció el 31 de mayo de 2024. Por esta razón, la querellante reclamó el 31 de mayo y el 4 de junio, por mensajes escritos al dueño, Sr. Ayala, sobre por qué su salario no se reflejaba y expresó su molestia con la situación, sin recibir respuesta. (Exhibit 4 de la querellante). El Sr. Ayala admitió haber leído estos mensajes.*

*30. El Sr. Ayala tomó la decisión de despedir a la querellante, lo cual notificó mediante carta del 4 de junio de 2024 firmada por él, recibida por la querellante mediante correo electrónico ese día.*

*31. Todas las asistentes de maestra que laboraban en Bright Beginnings para mayo de 2024 continuaron trabajando allí, excepto una empleada de nombre Ruth que renunció después.*

*32. El Sr. Michael Ayala afirmó que la matrícula de los estudiantes que comienzan en agosto se cierra en el mes de julio.*

*33. El patrono no proveyó evidencia del registro de entradas y salidas ("ponches") ni evidencia*

*documental alterna que acreditara el alegado patrón de ausentismo y tardanzas que sostienen tenía la querellante, incluso en el 2024.*

*34. La querellante no ha sido contratada para trabajar desde que fue despedida, aunque sostuvo que ha hecho gestiones para buscar empleo.*

*35. La querellante no recibió el beneficio del desempleo.*

*36. El patrono no le pagó a la querellante el Bono de Navidad correspondiente al año 2023. 37. El patrono no le liquidó días de vacaciones a la querellante tras ser despedida.*[5] (Énfasis nuestro).

De conformidad con lo anterior, el tribunal sentenciador resolvió que la Sra. Rodríguez Ovalle estableció que: (1) participó en una actividad protegida al acudir a la CFSE y (2) luego su patrono procedió a despedirla en represalia. Paralelamente determinó que la empleada se quejó ante el dueño de Bright Beginnings por no haber recibido los incentivos del PAL, y tras expresar su molestia, su patrono dio por terminado su contrato. En consecuencia, resolvió que la Sra. Rodríguez Ovalle tiene derecho al pago de $72,168.00, según se detalla a continuación:

*Determinamos que los actos de la parte querellada han provocado daños a tenor con la prueba presentada y por tanto la querellante tiene derecho a los siguientes remedios:*

*• Restitución en el empleo, de ser esto viable.*

*• Los sufrimientos y angustias mentales en la querellante se valoran en $5,000.*

*• Salarios dejados de devengar:*

*• desde el 5 de junio de 2024 hasta el 30 de junio de 2024 (19 días laborables) = $1,444.00*
*• desde el 1 de julio de 2024 hasta el 31 de diciembre de 2025 $29,640.003. Para un total de $36,084.00.*

*A tenor con la Ley Contra Represalias y la jurisprudencia citada, la responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación. Por tanto, se*

---

[5] Véase, entrada 47 del Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), a las págs. 4-8.

***le impone al patrono el pago de $72,168.00***.[6] (Énfasis nuestro).

De igual manera, el TPI decretó que la apelada tiene derecho a recibir la suma de $3,200.00 por el beneficio del incentivo que su patrono solicitó en el Programa de Asistencia Laboral, entre otras partidas que no están en disputa.

Inconforme, el 9 de enero de 2026, Bright Beginnings recurrió ante este foro intermedio apelativo, mediante un recurso de *certiorari*, acogido como apelación, en el cual esbozó los siguientes señalamientos de error:

1. *Erró al concluir que la querellante estableció un caso prima facie de represalias bajo Ley 115 sin actividad protegida, sin proximidad temporal y sin acción adversa.*

2. *Erró al concluir que existió despido injustificado, ignorando la razón legítima del cierre de grupo según fue probado por la parte querellada.*

3. *Erró al adjudicar daños emocionales sin evidencia médica, pericial o documental.*

4. *Erró el tribunal al ordenar el pago del programa PAL a pesar de que la evidencia demostró que la querellante no cumplía con los requisitos federales ni estatales para su adjudicación.*

5. *Erró al adjudicar salarios dejados de devengar cuando la querellante admitió que no buscó empleo, incumpliendo la mitigación de daños.*

Tras una serie de asuntos procesales a nivel apelativo, el 16 de enero de 2026, emitimos una Resolución, en la cual le concedimos a la parte apelada un término a vencer el 5 de febrero de 2026 para someter su posición. De conformidad con nuestro decreto, la Sra. Rodríguez Ovalle radicó su Alegato en Oposición a la Apelación

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

---

[6] Véase, entrada 47 del SUMAC TPI, a la pág. 17.

## II.

## A.

Nuestra Carta de Derechos de la Constitución de Puerto Rico contempla la protección laboral contra riesgos a la salud o la integridad personal en el empleo, y también, garantiza el principio de igual paga por igual trabajo. Art. II, Sec. 16, Const. ELA, LPRA, Tomo 1. Como corolario de lo anterior, la legislatura adoptó la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada (Ley Núm. 80-1976). Esta pieza legislativa tiene el propósito de proteger a los empleados de aquellas actuaciones arbitrarias por parte del patrono mediante el establecimiento de remedios económicos que desalienten los despidos injustificados. *Méndez Ruiz v. Techno Plastics*, 2025 TSPR 68, 216 DPR __ (2025); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 770 (2022).

Ahora bien, no existe una prohibición absoluta contra el despido de un empleado, más bien, se castiga aquella destitución sin que medie justa causa. *Rivera Figueroa v. The Fuller Brush. Co.*, 180 DPR 894, 904 (2011). A tales fines, el Art. 2 de la Ley Núm. 80, *supra*, delimita una serie de circunstancias que justifican la destitución de un empleado:

> *(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.*
>
> *(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.*
>
> *(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*
>
> *(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono*

*posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.*

*(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*

*(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29* LPRA sec. 185b.

Nótese que la precitada legislación no constituye un código de conducta, ni una lista de faltas definidas o taxativas, pues no pretende considerar la variedad de circunstancias y normas de los múltiples establecimientos de trabajo. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 292 (2019); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930 (2015). Por ello, el foro adjudicador debe evaluar si el despido no está motivado por razones legalmente prohibidas y si es producto del mero capricho del patrono de conformidad con el Art. 2 de la Ley de Despido Injustificado, *supra.* Véase, además, *González Santiago v. Baxter Healthcare, supra,* a la pág. 292.

Cónsono con lo establecido, resulta importante establecer que, como norma general, nuestro ordenamiento laboral no avala el despido ante una primera sanción. No obstante, "el citado estatuto no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". *Feliciano Martes v. Sheraton*, 182 DPR 368, 383 (2011); *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004). Ahora bien, la referida ley permite el despido de un empleado o empleada por una sola falta, cuando las circunstancias del caso reflejen que la decisión no fue una arbitraria ni caprichosa.

*Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 650 (1994).

En consonancia con esa protección, "[e]l esquema estatutario de la Ley Núm. 80, *supra*, establece una presunción de que todo despido es injustificado y le impone al patrono el deber de demostrar, mediante preponderancia de la prueba, que hubo justa causa para el mismo". *Ortiz Ortiz v. Medtronic, supra*, a la pág. 774; *Rivera Figueroa v. The Fuller Brush*. Co., *supra*, a las págs. 906-907. Así pues, al patrono le corresponde derrotar la presunción de que todo despido es injustificado. *Rivera Figueroa v. The Fuller Brush Co, supra*, a la pág. 906. Por ende, tiene "la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido" *Feliciano Martes v. Sheraton, supra*, a la pág. 385. Véase, también, *Báez García v. Cooper Labs., Inc.,* 120 DPR 145, 152 (1987).

Por tanto, si el juzgador de los hechos determina que el despido es injustificado, entonces le corresponde conceder un remedio, de conformidad con el Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185(a). Este estatuto de carácter reparador preceptúa que los empleados despedidos, sin causa justificada, tienen el derecho a recibir de su patrono una mesada. *Ruiz Mattei v. Commercial Equipment*, 214 DPR 407, 422-423 (2024). Sobre este asunto, el Tribunal Supremo de Puerto Rico ha precisado lo siguiente:

> ***Por medio de la mesada se busca compensar particularmente al empleado por el daño sufrido; proveerle de una suma de dinero que le permita atender sus necesidades básicas en lo que consigue un nuevo empleo, y tal como hemos expresado recientemente, reconocer el tiempo dedicado por el obrero a la empresa***. *Vélez Cortés v. Baxter*, 179 DPR 455, 465 (2010). (Énfasis nuestro).

Así pues, el Art. 1 de la Ley Núm. 80, *supra*, provee una indemnización a la cual el empleado tiene derecho en caso de ser

despedido, y esta constituye el remedio exclusivo. *Slim v. Royal Blue y otros*, 2025 TSPR 133, 217 DPR __ (2025). Véase, también, *Santiago Ortiz v. Real Legacy et al*, 206 DPR 194, 208-209 (2021). Dicha mesada se computa a base del mayor número de horas regulares de trabajo del empleado, durante cualquier período de 30 días naturales consecutivos, dentro del año inmediatamente anterior al despido, a tenor con el Art. 7 de la precitada legislación laboral. 29 LPRA sec. 185(g).

**B.**

La Ley Contra el Despido Injusto o Represalias a Todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194, según enmendada (Ley Núm. 115-1991), salvaguarda a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros.[7] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR*, 188 DPR 129, 136 (2013). En esa dirección, "[e]l historial legislativo es claro al expresar que la Ley Núm. 115 pretende conferir la mayor protección posible a los trabajadores". *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 164 (2007). Este es un estatuto de carácter reparador, basado en la política pública de alta estima a la protección de los derechos de los trabajadores, por lo que, su interpretación judicial debe ser liberal y amplia de manera que se alcancen los objetivos que la originaron. *Cordero Jiménez v. UPR, supra*, a la pág. 145.

De conformidad con lo expuesto, el inciso (a) del Art. 2 de la Ley Núm. 115-1991, *supra*, prohíbe los actos constitutivos de represalia:

---

[7] El Art. 1 de la Ley Núm. 115-1991, *supra*, dispone que esta legislación aplica a los patronos públicos o privados. 29 LPRA sec. 194

*(a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.* 29 LPRA sec. 194b.

Por su parte, el inciso (b) del precitado artículo provee una serie de remedios en atención a aquel empleado despedido en represalia:

**(b) Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los <u>daños reales sufridos, las angustias mentales</u>, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley.** Íd. (Énfasis nuestro).

Al amparo de esta protección, esta pieza legislativa reconoce una causa de acción en respuesta a aquellos contextos en el que el empleado realiza una actividad protegida, y luego es despedido, amenazado o discriminado. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 361 (2009); *Rivera Prudencio v. Mun. de San Juan*, *supra*, a la pág. 159. A tales efectos, la Ley Núm. 115-1991, *supra*, fija dos vías probatorias para sostener esta causa de acción. *Velázquez Ortiz v. Mun. de Humacao*, *supra*, a la pág. 670. Veamos.

De acuerdo con el inciso (c) del Art. 2 de la ley aquí discutida, el demandante puede probar la violación mediante la presentación de evidencia directa o circunstancial. 29 LPRA sec. 194b. Igualmente, puede establecer un caso *prima facie* de violación a la ley al probar que: (1) participó en una actividad

protegida por esta ley, y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Íd.

Si el empleado presenta la prueba, según se explicó, entonces el patrono debe alegar y fundamentar una razón legítima y no discriminatoria para el despido. *Íd.* No obstante, si el patrono demuestra que cumple con lo anterior, le corresponde al empleado demostrar que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Velázquez Ortiz v. Mun. de Humacao, supra,* a la pág. 671. La relación de causalidad puede establecerse mediante el criterio de proximidad temporal, es decir, que la acción adversa ocurrió luego de participar en una actividad protegida. *Íd.*

Sin embargo, el criterio de proximidad temporal no aplica en todos los casos. Por tal motivo, nuestro Máximo Foro estatal ha adoptado la siguiente normativa en atención a ese escenario:

> *Así, el trabajador deberá presentar evidencia que establezca: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso. Feliciano Martes v. Sheraton, supra,* a la pág. 400.

### C.

Es norma reiterada que, el empleado que haya sido despedido ilegalmente tiene derecho a recibir los salarios dejados de percibir. Este remedio monetario permite colocar al perjudicado en el estado en que se encontraba previo al despido ilegal, es decir, como si hubiera continuado trabajando y, por consiguiente, devengando tales ingresos. *Torres Rivera v. Econo Rial, Inc.,* 208 DPR 346, 359 (2021); *Whittenburg v. Col. Ntra. Sra. Del Carmen,* 182 DPR 937, 979 (2011). En ese sentido, el pago remitido en tal concepto "[s]e retrotrae a la fecha en que se realizó dicho despido y

se satisface en virtud de los salarios, tal y como si hubiesen sido devengados sin ninguna interrupción". *Hernández Feliciano v. Mun. de Quebradillas*, 211 DPR 99, 116 (2023); *Estrella v. Mun. de Luquillo*, 113 DPR 617, 619 (1982). Esta compensación procura "poner en vigor el carácter reparador y no punitivo de los estatutos laborales que establecen dicho remedio". *Torres Rivera v. Econo Rial, Inc.*, *supra*, a la pág. 359. Véase, también, *Whittenburg v. Col. Ntra. Sra. Del Carmen, supra*, a la pág. 979.

**D.**

La Administración para el Cuidado y Desarrollo Integral de la Niñez (ACUDEN) del Departamento de Familia de Puerto Rico adoptó las Guías para la Solicitud del Programa de Asistencia Laboral (Guías del PAL) del 13 de noviembre de 2023. Estas directrices garantizan el adecuado manejo de los fondos del *Child Care Stabilization Fund*, ortorgados en virtud del *American Rescue Plan Act* (ARPA), cuyo fin es brindar asistencia a los proveedores de cuidado infantil para mitigar los efectos de la pandemia del Covid-19 y facilitar su estabilización. Con ese propósito en mente, el inciso (B)(1) del apartado V de las Guías del PAL delimita los criterios de elegibilidad de los empleados que procuren solicitar, por conducto de sus proveedores, la subvención para el plan médico:

> *a. Ser empleado del centro de cuido u hogar licenciado, incluyendo proveedores bajo red de cuido, para la fecha en que solicitan los fondos del programa PAL, o haber comenzado a trabajar como un nuevo empleado en o antes del 31 de marzo de 2024.*
>
> *b. Tener una jornada laboral de mínimo 20 horas semanales.*
>
> *c. Contratistas independientes y personal contratado por servicios profesionales no son elegibles.*

A tales fines, si el empleado es elegible, entonces le corresponderá solicitar a su patrono los fondos y proporcionar la siguiente información:

*Todo proveedor elegible podrá solicitar fondos para esta categoría cumplimentando la sección correspondiente de la solicitud para el programa PAL. El proveedor deberá proveer toda la información requerida en la solicitud incluyendo, pero sin limitarse, el listado de empleados elegibles y la documentación requerida.* (B)(2), Apartado V, Guías del PAL.

Iguales requisitos aplican para solicitar la subvención por gastos de transportación, de conformidad con el inciso (C) del apartado V de las precitadas guías.

**E.**

Nuestro ordenamiento jurídico contempla el estándar de deferencia judicial hacia aquellas determinaciones de hechos alcanzadas por el foro primario como resultado de la apreciación de la prueba. Véase Regla 42. 2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42. 2. Así pues, "los tribunales apelativos otorgarán gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636, 657 (2021). Véanse, también, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Laboy Roque v. Pérez y otros*, 181 DPR 718, 744 (2011).

En virtud de esta norma, la determinación de credibilidad del foro primario "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos". *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los foros apelativos debemos abstenernos de intervenir en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el tribunal sentenciador. *Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022).

**III.**

En el recurso presente, Bright Beginnings nos invita a revocar la Sentencia apelada, puesto que considera que el foro primario erró al concluir que incurrió en represalia al despedir a la parte apelada. Igualmente, arguye que el TPI incidió al adjudicar daños emocionales sin la presentación de prueba pericial correspondiente. A su vez, impugna las cuantías impuestas en concepto del PAL y los salarios dejados de devengar.

Por su parte, la Sra. Rodríguez Ovalle alega que su separación del empleo respondió a un acto constitutivo de represalia. Precisa que el patrono optó por despedirla porque ella acudió al CSFE, y por reclamarle el impago del incentivo del PAL, al cual tiene derecho. Asimismo, advierte que la parte apelante no puede ampararse en la defensa de reducción de gastos operaciones, debido a que no presentó tal argumento oportunamente. En vista de ello, nos peticiona que confirmemos el dictamen cuestionado.

Luego de un análisis sosegado del recurso de epígrafe, determinamos que el foro primario actuó conforme a derecho al resolver que Bright Beginnings despidió a la parte apelada sin que mediara justa causa, en un acto constitutivo de represalia, según prohibido en la Ley Núm. 80, *supra*, y la Ley Núm. 115, *supra*. Veamos.

En los señalamientos de error (1) y (2) la parte apelante arguye que la Sra. Rodríguez Ovalle no estableció un caso *prima facie* de represalia. Argumenta que, su destitución respondió al cierre del grupo preescolar que la apelada atendía. No le asiste la razón.

Tras evaluar con sumo cuidado el expediente ante nos, colegimos que el despido de la Sra. Rodríguez Ovalle respondió a causas injustificadas derivadas de un acto evidente de represalia.

La parte apelada demostró mediante la prueba pertinente sometida ante el foro primario que participó en actividades protegidas al reclamarle a patrono el pago del beneficio del PAL 16 de mayo de 2024 y al acudir al CFSE el 29 de mayo de 2024. No obstante, subsiguientemente, el 4 de junio de 2024, recibió la notificación de su despido.[8]

Tal proceder nos devela que su destitución estuvo motivada por razones legalmente prohibidas en nuestro ordenamiento. Al respecto, notamos que Bright Beginnings no evidenció mediante la presentación de su prueba que la terminación del contrato laboral se produjo en un contexto de reestructuración operacional. Al contrario, la determinación de hecho núm. 31, recogida en la Sentencia, establece que las asistentes del centro de cuidado infantil continuaron trabajando en el centro de cuidado, con posterioridad al despido de la apelada.[9] Puntualizamos, además que, el patrono tampoco demostró que su destitución se suscitó en respuesta a un patrón de ausentismo. En vista de ello, concluimos que tales errores no se cometieron.

Atendido lo anterior, pasemos a discutir el señalamiento de error (3), en el cual la entidad apelante aduce que el foro primario incidió al adjudicar daños emocionales sin contar con prueba pericial. En cuanto a este planteamiento, advertimos que Bright Beginnings no nos colocó en posición para atender este señalamiento, toda vez que no sometió ante nos una transcripción de la prueba oral, de conformidad la Regla 76(A) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,*

---

[8] **Surge del expediente ante nuestra consideración que el foro primario formuló tales determinaciones de hechos a la luz del siguiente material probatorio: (1) Mensaje de WhatsApp entre la Sra. Rodríguez Ovalle y el Sr. Michael Ayala del 16 de mayo al 4 de junio de 2024 (Exhibit 4 de la parte apelada), (2) Cita con la CFSE y Decisión Administrativa (Exhibit 4 estipulado por las partes), (3) Mensaje de WhatsApp entre la Sra. Rodríguez Ovalle y la Sra. Yahaira Díaz del 2 y 4 de junio de 2024 (Exhibit 3 de la parte apelada).**

[9] Véase entrada del SUMAC TPI, a la pág. 7.

2025 TSPR 42, 215 DPR __ (2025).[10] Por tanto, debemos ser deferentes al ejercicio de la apreciación y la adjudicación de la prueba alcanzado por el foro primario, quien escuchó y vio a la Sra. Rodríguez Ovalle declarar sobre los daños y las angustias mentales que experimentó tras su despido. Véase, Regla 42.2 de Procedimiento Civil, *supra*. De conformidad con lo discutido, precisamos que estamos imposibilitados de sustituir los $5,000.00 otorgados por los daños y las angustias mentales sufridos, los cuales están englobados en la suma total de $72,168.00, de conformidad con el Art. 2(b) de la Ley Núm. 115, *supra*.

Ahora nos corresponde atender el señalamiento de error (4), en el cual la parte apelante sostiene que el TPI erró al concederle a la Sra. Rodríguez Ovalle el beneficio del PAL. Respecto a este particular, indica que esta última no cumple con los requisitos para recibir tal incentivo. Adelantamos que su argumento carece de fundamento legal y se distancia de la realidad fáctica que rodea a este caso.

Sobre este asunto, contemplamos que ambas partes estipularon la prueba documental vinculada con el proceso de solicitud del PAL.[11] Igualmente, acentuamos que la apelada demostró que al momento de solicitar dicho fondo cumplía con los requisitos de elegibilidad contenidos en las Guías del PAL, *supra*, a saber: (1) ser empleada del centro de cuidado para la fecha en que solicitaron los fondos, (2) tener una jornada laboral de mínimo 20 horas semanales y (3) no ser contratista independiente. No

---

[10] El 26 de enero de 2026, este Tribunal de Apelaciones dictó una Resolución en la cual establecimos que Bright Beginnings no cumplió con su obligación de notificar a este foro intermedio apelativo dentro del término de 10 días, respecto a su interés de reproducir la prueba oral según lo exige la Regla 76(A) del Tribunal de Apelaciones, *supra*. Por lo que, luego de examinar los señalamientos de error, así como el recurso de apelación, declaramos No Ha Lugar a la solicitud de transcribir prueba oral

[11] En cuanto a esta subvención, las partes estipularon la autenticidad y la admisibilidad de la siguiente prueba documental: (1) Inscripción y Acuerdo de Manejo Fondos Programa Federal, (2) Comprobantes de Retención (W-2) de la Sra. Rodríguez Ovalle emitidos por Bright Beginnings 2023-2024, (3) Formularios 480.6 SP de la Sra. Rodríguez Ovalle emitidos por Bright Beginnings en 2023-2024, y (4) las Guías del PAL.

obstante, a pesar de exhibir íntegramente los criterios anteriores, y pese a que el patrono gestionó a su nombre tal subvención, este optó por no desembolsar el mismo, según surge de las determinaciones de hechos (20) al (24).[12]  Por consiguiente, en atención a esa situación, el Art. 2(b) de la Ley Núm. 115, *supra*, permite reclamar los beneficios obtenidos en el trabajo. Así dispuesto, razonamos que el foro primario procedió correctamente al ordenar que la parte apelante remitiera $3,200.00, por el impago del beneficio concedido a la Sra. Rodríguez Ovalle.

Por último, nos compete discutir el señalamiento de error (5), en el cual Bright Beginnings manifiesta que el foro primario erró al concederle a la parte apelada una partida en concepto de salarios dejados de devengar, pese a que esta última no buscó empleo.  De nuevo, no le asiste la razón.

Surge de la determinación de hecho núm. 34, formulada por el juzgador de los hechos, que la Sra. Rodríguez Ovalle no ha sido contratada para trabajar en otro lugar desde que fue despedida, aunque ha efectuado las gestiones para conseguir un nuevo empleo.[13]  En esa línea, enfatizamos que la parte apelante no ha presentado prueba que nos permita resolver lo contrario.  Ante este contexto, razonamos que, la apelada tiene derecho a recibir el salario dejado de devengar, el cual procura colocarla en el estado en que se encontraba previo al despido ilegal.  Véanse *Torres Rivera v. Econo Rial, Inc.*, *supra*, a la pág. 359; *Whittenburg v. Col. Ntra. Sra. Del Carmen*, *supra*, a la pág. 979.  Por tanto, razonamos que dicho error tampoco se cometió.

En vista de lo anterior, concluimos que el TPI actuó correctamente al resolver que el despido de la Sra. Rodríguez Ovalle respondió a un acto constitutivo de represalia por parte de

---

[12] Véase, entrada 47 del SUMAC TPI, a las págs. 6-7.
[13] Véase, entrada 47 del SUMAC TPI, a la pág. 7.

Bright Beginnings. Reiteramos que el dictamen impugnado descansa en la totalidad de la prueba desfilada en el juicio, y es consistente con la política pública laboral que rige nuestro ordenamiento jurídico.    En virtud de ello, confirmamos la Sentencia Enmendada *Nunc Pro Tunc*, pues no refleja prejuicio, parcialidad, o pasión, ni error manifiesto en la interpretación o la aplicación de normativa jurídica sustantiva o procesal por parte del foro primario.

## IV.

Por los fundamentos que anteceden, los que hacemos formar parte en esta Sentencia, confirmamos la Sentencia Enmendada *Nunc Pro Tunc*, emitida el 7 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Arecibo.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones