Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| LUIS X. VALENTÍN DÍAZ<br><br>Parte Apelante<br><br>v.<br><br>ADT PUERTO RICO, LLC<br><br>Parte Apelada | TA2026AP00283 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV05646<br><br>Sobre: Despido Injustificado (Procedimiento Sumario) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece ante nos, el Sr. Luis X. Valentín Díaz (señor Valentín Díaz o apelante) mediante recurso de *apelación* y solicita que revisemos la *Sentencia* emitida el 6 de marzo de 2026, y notificada el 9 de marzo de 2026, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante el referido dictamen, el foro primario declaró *ha lugar* la Moción de Desestimación presentada por ADT Puerto Rico, LLC (ADT o apelada), determinando que el despido del señor Valentín Díaz fue justificado y, por consiguiente, ordenó el cierre y archivo con perjuicio de la causa de acción.

Examinados los escritos de las partes, así como los documentos que obran en autos, y por los fundamentos que se exponen a continuación, confirmamos la *Sentencia* apelada.

### I.

El 13 de junio de 2023, el señor Valentín Díaz radicó ante el TPI una *Querella* sobre despido injustificado en contra de ADT, al

---

[1] *Apelación*, SUMAC-TA del recurso TA2026AP00283, Entrada 1.

amparo del procedimiento sumario de reclamaciones laborales que establece la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, *Ley de Procedimiento Sumario de Reclamaciones Laborales* (Ley Núm. 2-1961).[2] En esta, alegó que trabajó para dicha empresa desde agosto de 2016 hasta el 2 de mayo de 2023, cuando su patrono lo despidió sin que mediara justa causa o explicación alguna. En virtud de lo anterior, el señor Valentín Díaz expresamente solicitó la concesión de la mesada que provee la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, *Ley de Indemnización por Despido sin Justa Causa,* (Ley Núm. 80-1976)[3], estimada en la cantidad de catorce mil trescientos diecinueve dólares con noventa y nueve centavos (14,319.99), más el pago por concepto de honorarios de abogado.

El 26 de junio de 2023, ADT presentó su *Contestación a la Querella[4]*, en la que negó la mayoría de las alegaciones. Entre sus defensas afirmativas, planteó que el despido del señor Valentín Díaz fue uno justificado conforme a las disposiciones de la Ley Núm. 80-1976, *supra*, pues obedeció a una reducción de personal por razones de negocio. En ese sentido, aseveró que, debido a que el despido fue con justa causa, era improcedente el pago de mesada y de honorarios de abogado. Por ello, solicitó al tribunal que declarara sin lugar la causa de acción instada en su contra.

Luego de varias incidencias procesales relacionadas al descubrimiento de prueba, el 20 de septiembre de 2024, ADT instó una *Moción de Sentencia Sumaria[5]* mediante la cual sostuvo que la causa de acción incoada en su contra debía ser desestimada con perjuicio. En esta propuso la existencia de veintinueve (29) hechos

---

[2] Véase, expediente electrónico del caso SJ2023CV05646 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda*.
[3] 29 LPRA sec. 185(a) *et seq.*
[4] Véase, expediente electrónico del caso SJ2023CV05646 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 5, *Contestación a la Querella*.
[5] *Íd.*, Entrada 39, *Moción de Sentencia Sumaria*.

materiales incontrovertidos y circunscribió, esencialmente, como asunto litigioso a determinar, si el señor Valentín Díaz tenía una causa de acción por despido injustificado en su contra.

En específico, señaló que, por razones de negocio y con el propósito de reducir costos y mejorar su competitividad y productividad, decidió dar por terminado el empleo de ochenta y tres (83) empleados en Estados Unidos y cinco (5) en Puerto Rico. A su vez, expuso que el señor Valentín Díaz era el empleado de menor antigüedad en su posición de Técnico de Servicio II, así como entre los demás técnicos e instaladores. Indicó, además, que este fue considerado para despido porque, al evaluar su capacidad, productividad, desempeño, competencia, eficiencia e historial de conducta frente al resto del personal técnico y de instalación, su puntuación reflejó un rendimiento por debajo de lo esperado. Por tal razón, reiteró que el despido no fue producto del arbitrio o capricho del patrono, sino que obedeció a razones que afectaban el buen y normal funcionamiento de la empresa.

Por su parte, el 23 de octubre de 2024, el señor Valentín Díaz presento una *Moción en Oposición a Solicitud de Sentencia Sumaria.*[6] Según su postura, existían controversias sobre hechos medulares, que impedían que se dictara sentencia sumaria en esa etapa de los procedimientos. Así, expuso que, de los hechos propuestos por ADT, varios comprendían asuntos relacionados con la reorganización de la empresa, tales como la necesidad de reducir costos de operación, la toma de decisiones sobre qué costos recortar, el proceso de determinación de las plazas a eliminar y los empleados que serían cesanteados, los cuales no fueron oportunamente alegados en la *Contestación a la Querella,* por lo que debían considerarse como renunciados o no puestos. A su vez, arguyó que era un hecho

---

[6] *Íd.*, Entrada 43, *Moción en Oposición a Solicitud de Sentencia Sumaria.*

incontrovertido que él era el empleado de mayor antigüedad en su clasificación y que ADT continuó realizando las tareas previamente desempeñadas por él mediante personal subcontratado, lo cual incumplió con la orden de retención y tornó el despido en uno caprichoso. Por ello, solicitó al foro primario que denegara la solicitud de sentencia sumaria.

Sometido el asunto y evaluados los escritos de ambas partes, el 6 de marzo de 2026, el foro primario emitió una *Sentencia* mediante la cual concluyó que, a tenor con las disposiciones de la Ley Núm. 80, *supra*, el despido del señor Valentín Díaz estuvo justificado. Por tal razón, declaró *ha lugar* a la solicitud de sentencia sumaria incoada por ADT y, consecuentemente, ordenó el archivo con perjuicio de la *querella* de epígrafe. Tras evaluar los escritos y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

1. El Sr. Luis X. Valentín Díaz es mayor de edad y residente de Toa Alta.

2. ADT Puerto Rico, LLC está dedicado al negocio de proveer productos y servicios en las áreas de seguridad residencial y comercial, como también otros servicios y productos, incluyendo seguridad para asuntos de salud y la población envejeciente.

3. Valentín Díaz prestó servicios para ADT desde el 24 de agosto de 2016 hasta el 2 de mayo de 2023, cuando ADT le notificó su despido.

4. Erika Torres le informó al querellante que estaba despedido por una reestructuración de la empresa.

5. Durante el tiempo en que el querellante prestó servicios a ADT, como contratista y como empleado, el querellante ocupó varias posiciones, comenzando como instalador y hasta ocupar la posición de Técnico de Servicio II (Technician II – Service).

6. En dicha posición, los deberes de Valentín Díaz incluían identificar y resolver problemas con equipos y cableado; reparar, reajustar y reemplazar equipo inoperativo y verificar el funcionamiento adecuado; leer e interpretar planos, planos de construcción y planos eléctricos para realizar las reparaciones; preparar formularios para reportar reparaciones; coordinar inspecciones y/o instalaciones con las agencias competentes; y realizar todas las funciones

y tareas asignadas y establecidas por sus supervisores, entre otras.

7. A principios de 2023, ADT empleaba a diez personas en las posiciones de técnicos de servicio e instaladores, incluyendo a Valentín Díaz.

8. El querellante era el empleado de menor antigüedad al compararlo con todos los técnicos de servicio como con los instaladores.

9. Por lo menos desde noviembre de 2019, ADT ha subcontratado en Puerto Rico los servicios de JL Security Electrical & A/C, Inc. (en adelante, "JL Security"), siendo el contrato de servicios más reciente el de 20 de noviembre de 2019.

10. JL Security provee servicios de instalación, mantenimiento, inspección y reparación de equipo de alarma y seguridad de residencia, pequeños negocios y comercial, a clientes de ADT a solicitud de ADT.

11. Como parte de la estrategia de negocio, tomando en consideración los costos e ingresos y para aumentar la competitividad y productividad del negocio, ADT determinó, a nivel de todo Estados Unidos, reducir costos y personal en varias localidades en donde opera, incluyendo Puerto Rico.

12. A principios del 2023, George Manginelli (en adelante, "Manginelli"), quien en aquel entonces se desempeñaba como Group General Manager para ADT a cargo de Florida y Puerto Rico, participó en varias llamadas con el "Senior Leadership Team" de ADT donde se discutió las operaciones de ADT y la necesidad de reducir costos para mejorar eficiencia.

13. Durante estas reuniones, Manginelli recibió instrucciones del "Senior Leadership Team" de ADT para reducir una cantidad específica de dólares en costos en las operaciones de Puerto Rico y Florida.

14. Manginelli implementó la reducción de costos reduciendo personal y reduciendo otros costos de operación de ADT en Puerto Rico y Florida.

15. Manginelli determinó que, para lograr la reducción en los costos, ADT tenía que eliminar cinco (5) puestos de trabajo en la operación de Puerto Rico.

16. Erika Torres, Gerente General de ADT en Puerto Rico (en adelante, "Torres"), y Manginelli, identificaron y seleccionaron a los empleados a ser despedidos en Puerto Rico a base de un análisis de productividad, calidad de trabajo, conocimiento del trabajo, enfoque al cliente, trabajo en equipo y las acciones correctivas de los empleados en sus expedientes de personal.

17. Como parte del proceso de selección para el despido de estos empleados, Torres preparó el documento titulado "Reduction in Force (RIF) Evaluation Form".

18. A las áreas de productividad, calidad del trabajo, conocimiento de las funciones, enfoque al cliente, y trabajo en equipo a ser evaluadas, Torres y Ángel Arroyo, "Team Manager High Volume Install and Service" de ADT en Puerto Rico en ese momento (en adelante, "Arroyo"), asignaron a cada empleado una puntuación de entre uno (1) y tres (3); siendo uno (1) la puntuación más baja indicando un pobre desempeño, y tres (3) la puntuación más alta indicando el mejor desempeño posible. En las áreas de productividad, calidad del trabajo, y enfoque al cliente, Torres y Arroyo asignaron la puntuación utilizando las métricas compiladas por ADT en estas áreas.

19. En las áreas de conocimiento de funciones y trabajo en equipo, Torres y Arroyo asignaron una puntuación a cada uno de los empleados entre uno (1) y tres (3) basado en su apreciación del conocimiento de funciones y trabajo en equipo de cada uno. Torres y Arroyo llegaron a un consenso de la puntuación asignada a cada empleado en estas áreas.

20. Luego de asignar puntuaciones en cada área, Torres calculó un promedio de las puntuaciones asignadas e incluyó el resultado en el documento "Reduction in Force (RIF) Evaluation Form." Torres incluyó, además, una nota para resaltar a los empleados que tuvieran acciones correctivas por desempeño en sus respectivos expedientes de personal.

21. Torres y Manginelli evaluaron los resultados y seleccionaron para despido a los cuatro (4) empleados en las posiciones de instalación y servicio con las puntuaciones más bajas en sus respectivas clasificaciones ocupacionales quienes, además, eran los únicos cuatro (4) empleados en el área de instalación y servicio que tenían acciones correctivas por desempeño en sus respectivos expedientes. Además de esas cuatro (4) posiciones en el área de instalación y servicio, ADT eliminó, además, una posición gerencial en Puerto Rico.

22. En específico, la reducción de personal impactó varias clasificaciones ocupacionales en la operación de ADT en Puerto Rico, a saber: dos (2) empleados en la clasificación ocupacional de Residential Installer, un (1) empleado en la clasificación ocupacional de Residential Technician II Service, un (1) empleado en la clasificación ocupacional de Residential Technician III Service y un (1) empleado en la clasificación ocupacional de Team Manager High Volume Install and Service.

23. Torres y Manginelli seleccionaron a Valentín Díaz para despido porque era el empleado con menor antigüedad, y obtuvo una puntuación de 2.4 de 3.0, una de las puntuaciones más bajas al comparar con sus compañeros, y tenía una consejería verbal o "verbal coaching" por incumplir con las métricas de eficiencia en el desempeño de sus funciones.

24. La puntuación de Valentín Díaz, 2.4 de 3.0, fue una de las puntuaciones más bajas de todos los técnicos en todos los niveles y de los instaladores.

25. Como parte del proceso de selección del querellante para su despido, ADT consideró, además de su antigüedad, la consejería verbal documentada en el correo electrónico de 31 de marzo de 2023 sobre no alcanzar la meta establecida para la eficiencia en el desempeño de las funciones.

26. Los empleados que se vieron afectados por la reducción de personal en Puerto Rico fueron seleccionados tomando en consideración a los empleados en la misma clasificación ocupacional.

27. El 3 de mayo de 2023, ADT notificó a Valentín Díaz varios documentos relacionados con su despido.

28. Durante su deposición, Valentín Díaz indicó que su despido fue injustificado porque su "posición no fue eliminada [...] sino fui despedido para básicamente ser reemplazado" y "no era que no había trabajo [...] Había demasiado de mucho trabajo y muchas quejas de clientes [...]".

29. Valentín Díaz fue uno de ochenta y ocho (88) empleados despedidos por ADT como parte de la reducción de personal. Empleados de ADT en Puerto Rico y diecinueve (19) estados, incluyendo Florida, Texas, Nueva York, Indiana, Pennsylvania, Kansas, Colorado, Tennessee, California, Georgia, Massachusetts, North Carolina, Washington, Connecticut, Louisiana, Mississippi, Nueva Jersey, Nevada, y Maryland, en treinta y cuatro (34) clasificaciones ocupacionales que incluyen IT Analyst, IT Architect, IT Director, IT Engineer, IT Senior Manager, IT Manager, IT Project Manager, IT Specialist, IT Vice-President, Quality Management Representative, CS & Monitoring Supervisor, Telemanagement Analyst, IT Senior Technician, Executive Administrative Assistant, Administrative Coordinator, Supply Chain Coordinator, Senior Software Developer, Installer, High Volume Install and Service Team Manager, Administrative Processor, Service Technician, Vintage Salary, Senior Customer Care Analytics Analyst, Employee Experience Unit Manager, Customer Care Enterprise Initiatives Manager, Retention Specialist, Care Administrator, NRD WKFCPLNG Administrator, NRD WKFCPLNG Analyst, Administrative Assistant Patrol, Care Team Manager, Product Engineer,

Technical Project Manager, Senior Product Engineer, y Product Engineer, fueron despedidos como parte de la reducción de personal que afectó a Valentín Díaz.

En desacuerdo, el 18 de marzo de 2026, el señor Valentín Díaz acudió ante este foro revisor mediante recurso de *apelación* y señaló que el foro primario cometió los siguientes errores:

Erró el Honorable Tribunal de Primera Instancia y abusó de su discreción al permitir enmiendas a las alegaciones de la querella, contrario a derecho.

Erró el Honorable Tribunal de Primera Instancia al determinar los hechos 8 al 26 y 29 de la Sentencia, con prueba que no fue notificada durante el descubrimiento de prueba y sostenidas con declaraciones juradas.

Erró el Honorable Tribunal de Primera Instancia al atender la sentencia sumaria más favorable para la parte querellada.

El 17 de abril de 2026, ADT compareció ante este foro intermedio mediante escrito intitulado *Alegato de la Parte Apelada.*

## II.

### A.

Es harto conocido que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil.[7] El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario.[8] De esta forma, se promueve la descongestión de calendarios.[9]

Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta.[10] Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros;

---

[7] Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36.
[8] *Conklin y otros v. Passalacqua y otros,* 217 DPR ___ (2026), 2026 TSPR 18 (resuelto el 24 de febrero de 2026); *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services,* 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414, 430 (2013).
[9] *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004).
[10] *Íd.,* pág. 332.

cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes.[11]

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia.[12] Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo.[13] De igual modo, la parte promovente puede presentar una sentencia sumaria por insuficiencia de prueba si demuestra que (1) no es necesario celebrar una vista evidenciaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho sustancial; y (3) como cuestión de derecho, procede la desestimación de la reclamación.[14]

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.[15] En efecto, la duda debe ser de tal naturaleza que permita concluir que existe una controversia real y sustancial sobre los hechos materiales.[16] De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición.[17] **Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa".[18] No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe**

---

[11] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).
[12] Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).
[13] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[14] *Pérez v. El Vocero de PR*, 149 DPR 427, 446-447 (1999).
[15] *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 110.
[16] *Íd.* (*citando a Ramos Pérez v. Univisión, supra*, pág. 214).
[17] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[18] *Íd.* (Énfasis suplido).

**proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa**.[19] En síntesis, ha quedado establecido que los tribunales no pueden dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho.[20]

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida.[21] Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.[22]

Mientras tanto, la Regla 36.3 (b) de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe

---

[19] Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c); véase, además, *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 453-454; *Ramos Pérez v. Univisión, supra,* págs. 215-216.

[20] *Negrón Castro et al. v. SLG et al*, 216 DPR ___ (2025), 2025 TSPR 96 (resuelto el 6 de octubre de 2025); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 335-336 (2021); *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

[21] Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3.

[22] Regla 36.3 (a) de Procedimiento Civil, *Íd.*, R. 36.3 (a).

contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.[23] Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede".[24]

En esa misma línea, la juzgadora o el juzgador de los hechos debe evaluar la prueba presentada para determinar cuáles hechos han quedado demostrado sujeto a que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes";[25] "[l]a obligación de presentar evidencia primariamente recae sobre la parte que sostiene la afirmativa en el asunto en controversia";[26] y en casos civiles, la decisión de la juzgadora y el juzgador se realizará mediante la preponderancia de la prueba conforme a criterios de probabilidad.[27] La preponderancia de la prueba ha sido definida como cuando se establece "como hechos probados aquellos que con mayores probabilidades ocurrieron".[28]

---

[23] Regla 36.3 (b) de Procedimiento Civil, *Íd.*, R. 36.3 (b).
[24] Regla 36.3 (c) de Procedimiento Civil, *Íd.*, R. 36.3 (c).
[25] Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A).
[26] Regla 110 (B) de Evidencia, *Íd.*, R. 110 (B).
[27] Regla 110 (F) de Evidencia, *Íd.*, R. 110 (F).
[28] *Berríos v. UPR*, 116 DPR 88, 101 (1985) (*citando a Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980).

En cuanto a los documentos en apoyo o en oposición a la sentencia sumaria, compete aclarar que si bien pueden utilizarse declaraciones juradas prestadas en beneficio propio (*self-serving*), como regla general, éstas resultan menos eficaces que otros documentos en apoyo a la solicitud de sentencia sumaria, como lo son la evidencia documental, la contestación a la demanda, las admisiones o el contenido de deposiciones. Sin embargo, estas declaraciones *self-serving* podrán ser tomadas en consideración al evaluarse la procedencia de una sentencia sumaria si cumplen con los requisitos establecidos en la Regla 36.5 de Procedimiento Civil, *supra*. Esto es, **si se basan en conocimiento personal del declarante, contienen hechos que serían admisibles en evidencia y demuestran que el declarante está cualificado para testificar en cuanto a su contenido**.[29]

Por lo antes dicho, **podrá dársele valor probatorio a una declaración jurada, siempre que ésta no se centre en conclusiones, sino que indique hechos específicos que la sustenten.**[30] Es decir, que **necesariamente deberán basarse en el conocimiento personal del declarante**.[31]

De otra parte, nuestro Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.[32]

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar

---

[29] Textualmente, la Regla 36.5 de Procedimiento Civil, *supra*, dispone lo siguiente:

Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del o de la declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el o la declarante está cualificado para testificar en cuanto a su contenido. Copias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta. El tribunal podrá permitir que las declaraciones juradas se complementen o se impugnen mediante deposiciones o declaraciones juradas adicionales.

[30] *Ramos Pérez v. Univisión*, supra, pág. 216.

[31] *Íd.*

[32] *Meléndez González et al. v. M. Cuebas*, supra.

solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil,[33] al igual que los criterios que la jurisprudencia le exige al foro primario.[34] Asimismo, debe examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, nuestro máximo foro reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni adjudicar los hechos materiales en controversia.[35]

En segundo lugar, señaló que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[36]

En tercer lugar, ordenó que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil.[37]

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho a la controversia.[38]

---

[33] Regla 36 de Procedimiento Civil, *supra*, R. 36.
[34] *Conklin y otros v. Passalacqua y otros*, supra.
[35] *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.
[36] *Íd.*; Regla 36 de Procedimiento Civil, *supra*.
[37] *Meléndez González et al. v. M. Cuebas, supra*, pág. 118; Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4.
[38] *Meléndez González et al. v. M. Cuebas, supra*, pág. 119.

**B.**

En nuestro sistema jurídico no existe una prohibición absoluta en contra del despido de un empleado.[39] Más bien, se protege el derecho del obrero a la tenencia de su empleo de una forma más efectiva, a la vez que se le otorga remedios más justicieros y esenciales, luego de un despido injustificado.[40] Por ejemplo, la Ley Núm. 80-1976, *supra*, le impone al patrono el pago de una mesada, si se despide injustificadamente al empleado que es contratado por un período de tiempo indeterminado.[41] Por lo tanto, este estatuto busca proteger el derecho de los trabajadores ante acciones arbitrarias y caprichosas de los patronos.[42]

Ahora bien, aunque esta normativa no define expresamente el despido injustificado, la Ley Núm. 80-1976, *supra*, sí expone varias circunstancias que liberan al patrono de responsabilidad y constituyen justa causa.[43] Así, define el término justa causa para el despido como aquella que no está motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. De igual modo, conforme al Artículo 2 (e) de la Ley Núm. 80-1976, *supra*, *justa causa* son también aquellas razones que afectan el buen y normal funcionamiento de un establecimiento, tales como: "[l]os cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público" y "[l]as reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito

---

[39] *Méndez Ruiz v. Techno Plastics*, 216 DPR ___ (2025), 2025 TSPR 68 (resuelto el 26 de junio de 2025); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 982 (2022).
[40] Véase Exposición de Motivos de la Ley Núm. 80-1976, *supra*.
[41] Artículo 1 de la Ley Núm. 80-1976, 29 LPRA sec. 185a; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 983.
[42] *Feliciano v. Luxury Hotels Int'l*, 210 DPR 712, 723 (2022).
[43] Artículo 2 de la Ley Núm. 80-1976, *supra*, 29 LPRA sec. 185b.

de aumentar la competitividad o productividad del establecimiento".[44]

De este modo, el legislador reconoció que pueden surgir situaciones en el funcionamiento y manejo de los negocios que ameritan despedir su empleomanía por justa causa. Entre estas, la reorganización, la cual constituye una actuación del patrono respecto a la administración de su negocio, y ocurre por razones económicas que enfrenta su operación diaria.[45] Cabe mencionar que, "no se requiere necesariamente experimentar una reducción en el volumen de producción, las ventas o las ganancias de la empresa en su conjunto para que se justifique la reorganización".[46] El patrono podrá tomar la decisión de reorganizar la empresa por cualquier motivo, siempre que se trate de una decisión empresarial válida, de utilidad y no por mero capricho.[47]

En el caso de la reorganización, el patrono puede cesantear a los empleados sin tener que pagar una indemnización.[48] Específicamente, nuestro más alto foro expresó que:

> Es claro que el Art. 2(e) de la Ley 80, *supra*, permite despedir empleados sin tener que pagar la compensación fijada por ese estatuto si esta decisión se toma como parte de una reorganización empresarial que así lo requiere. Un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*.[49]

A esos efectos, una reorganización *bona fide* es aquella que no es por mero capricho del patrono, sino que es producto del manejo de la empresa.[50]

---

[44] *Íd.*
[45] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 984.
[46] *Íd.*, pág. 1003.
[47] *Íd.*
[48] *Íd.*, pág. 1001.
[49] *SLG Zapata Rivera v. JF Montalvo*, supra, pág. 426.
[50] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 985.

Ahora bien, la única limitación que impone esta ley es retener con preferencia a los empleados de mayor antigüedad siempre que existan puestos vacantes u ocupados por empleados de menor antigüedad dentro de su misma clasificación ocupacional, y no entre clasificaciones ocupacionales distintas.[51] Aun así, nuestro Tribunal Supremo sostuvo que los cambios empresariales pueden acarrear el despido y el reclutamiento a la misma vez.[52]

Si la razón para el despido fue la reorganización empresarial, "la empresa no necesariamente tiene que alegar y probar que tuvo problemas económicos, sino que el patrono tiene que probar que, en efecto, se realizó una reorganización de buena fe y que, como parte de ese plan, el empleado fue despedido".[53] En otras palabras, el patrono debe demostrar que la modificación de su forma de realizar negocios se hizo en consideración del buen y normal funcionamiento de la empresa.[54] Asimismo, nuestro máximo foro sostuvo que:

> [N]o es función de los tribunales administrar los negocios ni aconsejar a los directores de estos sobre cómo manejar los asuntos de su empresa, siempre y cuando estas decisiones no estén motivadas por razones discriminatorias ni que mucho menos sean producto del mero capricho del patrono.[55]

(Énfasis en el original).

También resolvió que:

> Ahora bien, hoy aclaramos, y pautamos, que para demostrar justa causa basta con articular y presentar prueba sobre una razón válida para el despido, como por ejemplo sería la reorganización empresarial de los servicios rendidos al público. En ese sentido, la obligación que impone la Ley Núm. 80, supra, de probar efectivamente el proceso de reestructuración, no está sujeta a que se acredite la existencia de un proceso o un plan de reestructuración de una forma particular o *específica*. O sea, basta con que el patrono demuestre que la acción respondió a una decisión gerencial válida a la luz de las circunstancias y que no obedeció a un

---

[51] Artículo 3 de la Ley Núm. 80-1976, supra, 29 LPRA sec. 185c; *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 984-985.

[52] *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 985.

[53] *Íd.*, pág. 1001.

[54] *Íd.*

[55] *Íd.*, pág. 1002.

mero capricho o arbitrariedad, y así *tendrá que acreditarlo.*[56]

(Énfasis suplido en el original).

### III.

Nos corresponde determinar si procedía desestimar sumariamente la causa de acción sobre despido injustificado incoada por el señor Valentín Díaz. *Veamos.*

Por estar estrechamente relacionados los errores señalados en el recurso de apelación bajo nuestra consideración, procedemos a discutirlos en conjunto. En síntesis, la parte apelante sostiene que el foro de instancia erró y abusó de su discreción al permitir enmiendas a las alegaciones de la querella, así como al determinar diversos hechos incontrovertidos en la sentencia con base en prueba que no fue notificada durante el descubrimiento de prueba ni sustentada adecuadamente en declaraciones juradas. Asimismo, plantea que el foro apelado erró al atender la solicitud de sentencia sumaria de forma más favorable para ADT.

A su vez, la parte apelante alega que el foro primario no evaluó adecuadamente las alegaciones contenidas en la contestación a la querella, en la cual ADT se limitó a afirmar que el despido respondió a una reducción de personal por razones de negocio. En ese contexto, señala que el tribunal consideró indebidamente nuevas alegaciones introducidas mediante la solicitud de sentencia sumaria, las cuales se apoyaron en declaraciones juradas y documentos no producidos durante el descubrimiento de prueba. Además, manifiesta que la alegada reorganización de la empresa fue solo una excusa para despedir empleados de forma caprichosa, pues la prueba presentada demostró que ADT no sufrió bajas en las ventas ni en el volumen de negocio, sino que, por el contrario, contaba con estabilidad económica. Finalmente, sostiene que, al

---

[56] *Íd.*, págs. 1002-1003.

reducir puestos, la parte apelada debió prescindir primero de los empleados subcontratados en lugar de él, quien contaba con mayor antigüedad en el puesto. Concluye que no existió justa causa para su despido y que este fue caprichoso y carente de fundamento en hechos y derecho.

Por su parte, la parte apelada expuso que se debería confirmar la sentencia. Arguye que el foro apelado actuó correctamente al dictar sentencia sumaria desestimando la querella, pues el apelante no presentó evidencia alguna que refutara los hechos materiales no controvertidos propuestos por ADT, que demostraron justificación para el despido.

Primeramente, nos corresponde examinar si ambas partes cumplieron con los requisitos de forma exigidos por la Regla 36, *supra*, para luego determinar si existen hechos materiales en controversia que impidan la adjudicación sumaria del caso, y finalmente aplicar el derecho aplicable.

Según se ha establecido, los tribunales apelativos estamos en igual posición que el foro sentenciador al revisar un petitorio sumario. Conforme a la norma aplicable, la parte que se opone a que se declare con lugar una solicitud de sentencia sumaria viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente. En su oposición, dicha parte debe controvertir de manera puntual los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, *supra*.

En el presente caso, la *Moción de Sentencia Sumaria* presentada por ADT ante el foro primario contiene una exposición breve de las alegaciones de las partes, una relación de las controversias planteadas, el petitorio sumario solicitado, así como una relación organizada y puntual en párrafos numerados sobre los

hechos esenciales y pertinentes que no están en controversia, acompañada de la documentación existente que los sustentan. Asimismo, incluyó las razones por las cuales procedía dictar sentencia sumaria a su favor y el remedio solicitado. Por lo anterior, concluimos que la solicitud de ADT cumplió con los requisitos estatutarios y jurisprudenciales exigidos por la Regla 36.3 de Procedimiento Civil, *supra.*

Por otro lado, al examinar la *Moción en Oposición a Solicitud de Sentencia Sumaria* instada por el señor Valentín Díaz, se advierte que ésta incumple sustancialmente con los requisitos de forma establecidos por la Regla 36.3 de Procedimiento Civil, *supra.* En su escrito, el señor Valentín Díaz se limitó a solicitar la denegatoria de la sentencia sumaria, sin controvertir de manera específica los hechos esenciales y pertinentes propuestos por la parte apelada, ni acompañar prueba admisible o declaraciones juradas que sustentaran su posición.

En su mayoría, sus planteamientos consisten en aseveraciones generales en torno a que los hechos propuestos por ADT no fueron alegados en la contestación a la querella; que la prueba presentada no era admisible en evidencia y; que las declaraciones juradas carecían de valor probatorio suficiente por constituir *self-service.* No obstante, no hizo referencia a documentos ni presentó evidencia que controvirtiera los hechos propuestos por ADT, ni que tendiera a demostrar que el despido fue injustificado. En consecuencia, no sustentó adecuadamente sus alegaciones para que fueran consideradas por el TPI ni por este Tribunal.

No podemos perder de perspectiva que, al ser la parte promovida la que se opone a la solicitud de sentencia sumaria, venía obligada a rebatir los hechos sobre los cuales alega que existe controversia mediante prueba admisible o declaraciones juradas,

pues el ordenamiento jurídico no permite meras alegaciones para derrotar una solicitud de sentencia sumaria.

Ahora bien, nos corresponde determinar si existen hechos en controversia que impidan la adjudicación sumaria del caso. Tras un examen detenido del expediente, así como de las mociones de sentencia sumaria y oposición, y de los documentos anejados a las mismas, concluimos que no existen hechos materiales en controversia. Ante ello, coincidimos con las determinaciones de hechos formuladas por el foro primario y las adoptamos como nuestras. Por último, nos corresponde revisar *de novo* si el foro apelado aplicó correctamente el derecho.

La parte apelante aduce que el foro primario erró al permitir enmiendas a las alegaciones de la querella y al disponer sumariamente el caso, toda vez que ADT incluyó en su moción de sentencia sumaria alegaciones relacionadas con la causa del despido que, a su juicio, tuvieron el efecto de enmendar la contestación a la querella. Sostiene que dicha actuación generó controversias de hechos que impedían la adjudicación sumaria del pleito. *No le asiste razón.*

En su contestación a la querella, la parte apelada sostuvo reiteradamente que el despido del señor Valentín Díaz fue justificado. En específico, en respuesta a la alegación número 4 de la *querella*, indicó lo siguiente:

> [...] ADT alega afirmativamente que el 28 de abril de 2023, despidió justificadamente al querellante como parte de una reducción de personal por razones de negocio y según permitido por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA §185a et seq. ("Ley 80"). ADT alega afirmativamente que las razones de negocio para el despido justificado del querellante incluyeron, sin limitarse, a la reducción del volumen de negocios.

Al evaluar la referida contestación a la querella en conjunto con la solicitud de sentencia sumaria, surge con claridad que ADT no introdujo nuevas alegaciones sobre las causas de despido del

señor Valentín Díaz, sino que desarrolló y detalló el proceso mediante el cual se identificaron y seleccionaron los empleados a ser cesanteados en Puerto Rico, explicando que dicho proceso se llevó a cabo conforme a criterios objetivos, tales como productividad, calidad de trabajo, conocimiento del puesto y el historial de medidas correctivas en el expediente de cada empleado. Tales alegaciones ya habían sido planteadas, al menos de forma sucinta, desde la contestación a la querella. En consecuencia, lo expuesto en la solicitud de sentencia sumaria, constituyó una ampliación o desarrolló de una defensa afirmativa previamente levantada, y no una enmienda sustantiva a las alegaciones. Por tanto, no se cometió el error señalado por la parte apelante.

Ahora bien, del expediente se desprende que el patrono demostró la existencia de justa causa para el despido. El señor Valentín Díaz fue uno de varios empleados cesanteados por ADT como parte de un proceso de reducción de personal dirigido a disminuir costos y aumentar la competitividad y productividad del negocio. La parte apelante no presentó prueba que controvirtiera o generara dudas sobre el hecho de que el despido fue justificado. La ausencia de prueba en contrario nos lleva a concluir, al igual que el foro primario, que procede la desestimación con perjuicio de la reclamación por despido justificado.

Por consiguiente, resolvemos que el tribunal de instancia actuó correctamente al declarar *ha lugar* a la solicitud de sentencia sumaria presentada por ADT y, en consecuencia, al desestimar con perjuicio la causa de acción de epígrafe. En suma, no se cometieron los errores señalados por la parte apelante, por lo que procede confirmar el dictamen apelado en su totalidad.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia,* emitida el 6 de marzo de 2026, pero notificada el 9 de

marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones